UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: AUTO BODY SHOP
ANTITRUST LITIGATION

|  |  |
|---|---|
| MDL Case No: | 6:14-md-2557-Orl-31TBS |
| Individual Case Nos: | 6:14-cv-6006-Orl-31TBS |
|  | 6:14-cv-6007-Orl-31TBS |
|  | 6:14-cv-6009-Orl-31TBS |
|  | 6:14-cv-6010-Orl-31TBS |
|  | 6:14-cv-6011-Orl-31TBS |
|  | 6:14-cv-6012-Orl-31TBS |
|  | 6:14-cv-6013-Orl-31TBS |
|  | 6:14-cv-6014-Orl-31TBS |
|  | 6:14-cv-6015-Orl-31TBS |
|  | 6:14-cv-6008-Orl-31TBS |
|  | 6:14-cv-6020-Orl-31TBS |
|  | 6:14-cv-6018-Orl-31TBS |
|  | 6:14-cv-6019-Orl-31TBS |
|  | 6:15-cv-6022-Orl-31TBS |

## REPORT AND RECOMMENDATIONS

Pending before me on referral from the presiding district judge are Defendants' motions to dismiss Plaintiffs' complaints in the following cases: 6:14-cv-6006 (Arizona); 6:14-cv-6007 (Michigan); 6:14-cv-6009 (Alabama); 6:14-cv-6010 (California); 6:14-cv-6011 (Illinois); 6:14-cv-6012 and 6:14-cv-6013 (New Jersey); 6:14-cv-6014 (Oregon); 6:14-cv-6015 (Washington); 6:14-cv-6008 and 6:14-cv-6020 (Pennsylvania); 6:14-cv-6018 (Kentucky); 6:14-cv-6019 (Virginia); and 6:15-cv-6022 (Missouri) (collectively, the "Pending Cases").   After due consideration, I respectfully recommend that the motions be **granted in part** and **denied in part**, that the complaints in the Pending Cases be dismissed, that the dismissals be without prejudice and with leave to amend except as otherwise stated in this report & recommendations, and that Plaintiffs be afforded 21 days' leave to file amended complaints.

## I. Background

Plaintiffs are 64 auto body repair shops in 12 different states, a former owner of such a business, and a trade association for auto body shops based in the state of Pennsylvania.    The Defendants are insurance companies that write automobile insurance in the states where Plaintiffs do business.    In each case, Plaintiffs allege that Defendants conspired to fix prices and boycott Plaintiffs in violation of § 1 of the Sherman Act.    Plaintiffs also assert a variety of state common law and statutory claims including unjust enrichment, tortious interference, conversion, quasi-estoppel, violations of state antitrust law, and unfair trade practices.    The allegations in these cases are similar to those in A&E Auto Body, Inc. v. 21st Century Centennial Insurance Co., No. 6:14-cv-00310, 2015 WL 304048, (M.D. Fla. Jan. 21, 2015), which the Court summarized in its Order granting the motions to dismiss in that case:

> The Defendants in this case are alleged to "exert control" over the Plaintiffs' businesses (and the hourly rates paid by the Defendants) in a number of ways, beginning with agreements generally referred to as "direct repair programs" or "DRPs". To participate in a particular insurer's DRP, a repair shop typically agrees to certain concessions in regard to such things as the prices it will charge and the priority given to vehicles owned by people who have insurance through that insurer.    In exchange, the repair shop is listed as a "preferred provider".    However, the Plaintiffs complain that the prices that they were permitted to charge under the DRPs were unfairly manipulated, that even repair shops that were not participating in DRPs were restricted to those price ceilings, and that repair shops that complained about these practices or tried to charge higher prices faced intimidation and boycotts from the insurers.
>
> As a general proposition, each DRP contains language obligating the repair shop to charge the insurance company no more than the "market rate" for repairs in the general area. State Farm Mutual Automobile Insurance Company ("State Farm"), a Defendant in this case, determines this market rate. State Farm surveys the repair shops in a given area,

determines the hourly rate charged by each repair technician, and then designates a rate just above the midpoint of all rates charged to be the "market rate."   However, the Plaintiffs complain that State Farm alters the survey results to achieve a "wholly artificial 'market rate'" and uses this artificially lowered result to negotiate price decreases from repair shops.   If a repair shop attempts to raise its hourly rate, State Farm will, among other things, remove it or threaten to remove it from the DRP.

The other Defendants, who do not perform such surveys, "specifically advised the Plaintiffs that they will pay no more than State Farm pays for labor."   The Defendants refuse to pay a higher labor rate even to Plaintiffs who are not participating in a DRP.

The Plaintiffs also allege that the Defendants improperly lowered the amounts that they paid for repairs by, among other things, refusing to pay for replacement parts even where the repair shop thought replacement was a better option than repair and by requiring utilization of used parts even where new parts were available.   The Plaintiffs also complain that the Defendants (1) are refusing to abide by the estimates set forth in the industry's leading collision-repair-estimating databases; (2) that they are refusing to pay for certain required materials and practices on the grounds that those items are included in the price of the repair; and (3) that they have imposed arbitrary caps on the amount they are willing to pay for paint as part of a repair.

Id. at *1-2.

Plaintiffs filed these lawsuits in 12 federal district courts between October 27 and November 7, 2014.   On December 3, 2014, the United States Judicial Panel on Multidistrict Litigation ("JPML") transferred to this Court the cases from Arizona, Michigan, Alabama, California, Illinois, New Jersey, Oregon, and Washington, and one of the cases from Pennsylvania (6:14-cv-6008).   (JPML, Case MDL No. 2557, Docs. 270, 271). Transfer of the Oregon case was stayed on December 6, 2014 (Id., Doc. 274).   The JPML transferred the cases from Kentucky and Virginia on December 16, the remaining case from Pennsylvania (6:14-cv-6020) on December 23, and the Missouri action on

February 6, 2015 (JPML, Case MDL No. 2557, Docs. 338, 364, 413).   On April 1, 2015,

the JPML vacated the stay of the transfer in the Oregon case (Id., Doc. 416).

   In each case, Defendants have filed motions to dismiss,[1]  Plaintiffs have filed a

consolidated response, and Defendants have filed replies.   District Judge Presnell has

referred the pending motions to dismiss to me for preparation of reports and

recommendations pursuant to 28 U.S.C. § 636(b)(1)(B).

## II. Legal Standard

   Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the

claim showing that the pleader is entitled to relief" so as to give the defendant fair notice

of what the claim is and the grounds upon which it rests, Conley v. Gibson, 355 U.S. 41,

47 (1957), overruled on other grounds Bell Atlantic Corp. v. Twombly, 550 U.S. 544

(2007).   A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the

sufficiency of the complaint; it does not decide the merits of the case.   Milburn v. United

States, 734 F.2d 762, 765 (11th Cir.1984).   In ruling on a motion to dismiss, the court

---

[1] In most of the Pending Cases, Defendants have filed two separate motions to dismiss.   The Defendants affiliated with GEICO typically filed their own motion to dismiss, although their motion is joined by the CSAA Insurance Group Defendants in the Arizona and California cases and the MetLife Defendants in the Arizona case.   With the exception of Oregon, all remaining Defendants in each case have filed a "joint motion" to dismiss.   In the Michigan case (6:14-cv-6007) and one of the Pennsylvania cases (6:14-cv-6020), no GEICO Defendant is a party so all Defendants have joined the joint motion.   When discussing specific motions, the Court will refer to the Defendants who joined GEICO's motion as the "GEICO Defendants" and the Defendants who joined the joint motion as the "Non-GEICO Defendants."

Two defendants in the Oregon case (6:14-cv-6014) have filed their own motions to dismiss. Defendant American Commerce Insurance Company filed a brief five-page motion and notice of joinder in the motions of the GEICO and Non-GEICO Defendants (Id., Doc. 123).   The motion asks for dismissal of the complaint "in its entirety and with prejudice" but does not explain why dismissal with prejudice is warranted.   Defendant Omni Insurance Company filed a longer motion raising similar arguments to those raised in the two principal motions in the Oregon case, but requesting dismissal with prejudice and an award of attorney's fees under ORS § 20.105.   (Id., Doc. 129).   This motion also does not explain why dismissal with prejudice is warranted.   The Eleventh Circuit has emphasized that district courts have very limited discretion to deny leave to amend when a plaintiff has had only one chance to plead its claims. Isbrandtsen Marine Services, Inc. v. M/V Inagua Tania, 93 F.3d 728, 734 (11th Cir. 1996).   Absent some explanation why the Oregon Plaintiff should not be allowed to amend its claims against Defendants American Commerce and Omni, I cannot recommend dismissing the claims against them with prejudice.   I recommend that the Court deny Omni's request for attorney's fees without prejudice to Omni re-filing its motion should the Court dismiss the claims against it with prejudice.

must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff.   SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir.1988). The court must limit its consideration to the pleadings and any exhibits attached to the pleadings.   FED.R.CIV.P. 10(c), 12(d); see also GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir.1993).

A plaintiff must provide sufficient factual allegations to raise its right to relief above the speculative level, Twombly, 550 U.S. at 555, and to indicate the presence of the required elements, Watts v. Florida Int'l Univ., 495 F.3d 1289, 1302 (11th Cir.2007). Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts will not prevent dismissal.   Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir.2003).

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court explained that, while a complaint need not contain detailed factual allegations Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.   A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.   Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."   Id. at 678 (internal citations and quotations omitted).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the plaintiff is entitled to relief.'"   Id. at 679 (quoting FED.R.CIV.P. 8(a)(2)).

### III. Discussion

#### A. Group Pleading

Defendants argue that the Court should dismiss all of the complaints because Plaintiffs engaged in impermissible group pleading by making collective allegations

against "Defendants."   In response, Plaintiffs argue that group pleading is perfectly acceptable, and that when they refer to "Defendants" collectively, they are only alleging that all Defendants engaged in the same conduct.

Plaintiffs' use of group pleading has been an issue since the start of this litigation. On June 11, 2014, the Court *sua sponte* dismissed the original complaint in the Florida case, in part because of the use of group pleading (Case No. 6:14-cv-310, Doc. 110). The Court explained:

> With limited exceptions, the allegations of wrongdoing are attributed, collectively, to every Defendant and alleged to have been perpetrated upon every Plaintiff.   While there may be situations in which such collective descriptions are sufficient, at least some of claims asserted here require individualized allegations.

(Id. at 2).   The Florida Plaintiffs amended their complaint by adding the following sentence to each paragraph that referred generally to "Defendants":

> The individual Defendants specifically included within the use of the term "the Defendants" in this paragraph include 21 Century Centennial Insurance Company, 21 Century Indemnity Insurance Company, Acceptance Indemnity Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Insurance Company, Bristol West Insurance Company, Direct General Insurance Company, Encompass Indemnity Company, Esurance Property & Casualty Insurance Company, Esurance Insurance Company, First Acceptance Insurance Company, Inc., Florida Farm Bureau General Insurance, Florida Farm Bureau Casualty Insurance Company, Foremost Insurance Company, GEICO General Insurance Company, Hartford Accident and Indemnity Company, Hartford Underwriters Insurance Company, Horace Mann Insurance Company, Infinity Auto Insurance Company, Liberty Mutual Insurance Company, Mercury Insurance Company of Florida, MGA Insurance Company, Inc., National General Insurance Online, Inc., Nationwide Insurance Company of Florida, Inc., Nationwide Mutual Insurance Company, Ocean Harbor Casualty Insurance Company, Old Republic Insurance Company, Progressive American Insurance Company, Progressive Select Insurance Company,

Safeco Insurance Company of America, Security National Insurance Company, Sentry Insurance A Mutual Company, State Farm Mutual Automobile Insurance Company, The Cincinnati Insurance Company, Travelers Indemnity Company, USAA Casualty Insurance Company, United Services Automobile Association, Westfield Insurance Company, Windhaven Insurance Company, and Zurich American Insurance Company.

See A & E Auto Body, 2015 WL 304048, at *3.

In its January 21, 2015 Order dismissing the Florida amended complaint the Court condemned this practice:

Not surprisingly, the term "the Defendants" appears throughout the Amended Complaint.   As a result of the unwarranted inclusion of these names wherever that phrase appears, the Amended Complaint is more than twice as long as the (already lengthy) Complaint, and much more difficult to read.   This is unacceptable, and will result in sanctions if not cured in subsequent pleadings.   A requirement to provide "individualized allegations" cannot reasonably be read as a requirement to repeat the name of every individual Defendant, over and over.

Counsel for the Plaintiffs argue that, wherever they use the term "the Defendants," they always intend to refer to every single Defendant.   But this does not appear to always be the case.   For example, in the paragraphs quoted above, the Plaintiffs allege that "the Defendants" enter DRP agreements with the individual Plaintiffs.   But according to the list that the Plaintiffs attached to the Amended Complaint, only a handful of the Defendants have entered into DRPs with any Plaintiff. (Doc. 167-4).   And some Defendants have informed the Court that they have never participated in a DRP with any repair shop.[footnote]   The Plaintiffs should insure that their references to "the Defendants" are, in fact, intended to encompass every single Defendant.

Id. at *3-4.   In a footnote, the Court observed:

Plaintiffs have not addressed the Court's concerns over their attempt to proceed collectively on state law claims, such as conversion and unjust enrichment, which would seem to require individualized allegations.   As those claims are being dismissed on other grounds, and in the absence of detailed briefing on the issue, the Court will not spend more time on

the issue.   However, the issue has not been settled, and any
party may raise it in connection with future pleadings.

Id. at *4 n. 8.

In orders adopting my reports and recommendations on motions to dismiss in the

Tennessee, Utah, and Louisiana cases, the Court again addressed group pleading:

> As for the tortious interference claim, Magistrate Judge Smith
> concluded that the allegations were implausible, in that the
> Plaintiffs were alleging that all of the Defendants were
> interfering with the business of all of the Plaintiffs, including
> those with whom the Defendants had DRPs.   Magistrate
> Judge Smith concluded that the generalized, shotgun nature
> of the Plaintiffs' contentions does not satisfy the applicable
> pleading standard and recommended that, in any amended
> complaint, the Plaintiffs be required to specify which
> Defendants interfered with which Plaintiffs.   The Plaintiffs
> contend that this is an impractical pleading standard because
> it seeks to compel them to produce information "which is
> peculiarly within the possession and control of the
> Defendants."   But there is nothing in the Complaint that
> explains why the Defendants, but not the Plaintiffs, would
> have this information.   Surely the Plaintiffs must have some
> basis to believe that certain Defendants interfered with certain
> of the Plaintiffs' customers.   A general allegation that some
> unidentified Defendants–or all Defendants–interfered with
> some unidentified customers of some unnamed Plaintiff does
> not satisfy the requirements of Ashcroft v. Iqbal, 556 U.S. 662,
> 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Brewer Body Shop, LLC v. State Farm Mutual Auto. Ins. Co., ___ F. Supp. 3d ___, ___, 2015

WL 1911418, at *1 (M.D. Fla. Apr. 27, 2015); Alpine Straightening Systems v. State Farm

Mutual Auto. Ins. Co., No. 6:14-cv-6003, 2015 WL 1911635, at *1 (M.D. Fla. Apr. 27,

2015); Parker Auto Body Inc. v. State Farm Mutual Auto. Ins. Co., Case No. 6:14-cv-

6004, Doc. 118 at 3 (M.D. Fla. Apr. 27, 2015); Southern Collision & Restoration, LLC v.

State Farm Mutual Auto. Ins. Co., No. 6:14-cv-6005, 2015 WL 1911768, at *1 (M.D. Fla.

Apr. 27, 2015).

Most cases addressing the subject of "group pleading" arise in the fraud context. Frazier v. U.S. Bank Nat'l Ass'n, No. 11 C 8775, 2013 WL 1337263, at *3 (N.D. Ill. Mar. 29, 2013).   Allegations of fraud are subject to heightened pleading requirements.   See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").   Ordinarily, a plaintiff cannot satisfy the requirements of Rule 9(b) through group pleading.   Targum v. Citrin Cooperman & Co., LLP, No. 12 Civ. 6909(SAS), 2013 WL 6087400, at *6 n. 101 (S.D.N.Y. Nov. 19, 2013).

The use of group pleading may also result in a complaint failing to meet the more lenient pleading standard in Rule 8(a).   "Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it."   Holmes v. Allstate Corp., No. 11-CV-1543, 2012 WL 627238, at *22 (S.D.N.Y. Jan. 27, 2012), report & recommendations adopted, 2012 WL 626262 (Feb. 27, 2012).[2]

But, there are cases in which group pleading may be acceptable.   For example, the Eleventh Circuit arguably endorsed the use of group pleading in Crowe v. Coleman, 113 F.3d 1536, 1539 (11th Cir. 1997).   In Crowe, the plaintiffs' former neighbor ran a gas station that was eventually shut down and sold.   Id. at 1537-38.   Plaintiffs sued both the current and former owners of the gas station property for nuisance alleging, among other

---

[2]   See also DeSoto v. Board of Parks and Recreation, __ F. Supp. 3d. __, 2014 WL 6680681, at *11 (M.D. Tenn. Nov. 25, 2014) (dismissing § 1983 claim in part based on group pleading, because "under § 1983, a plaintiff must show that each defendant was personally involved in the alleged constitutional deprivation"); Targum, 2013 WL 6087400, at *6 (concluding that group pleading in complaint "fail[ed] to put [one of the defendants] on notice of the specific allegations against it"); Eunice v. United States, No. 12cv1635-GPC(BGS), 2013 WL 756168, at *3 (S.D. Cal. Feb. 26, 2013) ("Lumping all 'defendants' together and facts regarding the incident does not put a particular defendant on notice as to the grounds for the allegations."); Tatone v. SunTrust Mortgage, Inc., 857 F. Supp. 2d 821, 831 (D. Minn. 2012) ("A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant."); Lane v. Capital Acquisitions & Mgmt. Co., No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [Plaintiffs'] Complaint fails to satisfy the minimum standard of Rule 8.").

things, that "[t]he defendants have allowed the escape of gasoline from their property onto the property of the plaintiffs."   Id. at 1539.   The Eleventh Circuit explained that "[w]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually."   Id.

In In re TFT-LCD (Flat Panel) Antitrust Litig., 599 F. Supp. 2d 1179 (N.D. Cal. 2009), a federal district court rejected challenges to a complaint based on group pleading. The court dismissed the original complaint because it "lacked allegations specific to each defendant," and granted the plaintiffs "leave to amend to more specifically plead how each defendant joined the alleged price-fixing conspiracy."   Id. at 1183.   The plaintiffs left the collective allegations in their amended complaint, but added paragraphs directed at specific defendants.   Id. at 1183-84.   The court rejected the defendants' "group pleading" challenge to the amended complaint because the new allegations "more than adequately allege[d] the involvement of each defendant and put defendants on notice of the claims against them."   Id. at 1184; see also id. at 1185 ("The complaints allege a complex, multinational price-fixing conspiracy and, taken as a whole, they sufficiently allege each defendants' participation in that conspiracy, as well as present a factual basis for the allegations of agency.").

The only specific allegations about most of the Defendants in the Pending Cases are that they are insurers who are licensed to do business in particular states.   For example, the Arizona complaint mentions only State Farm and Safeco in the factual allegations, and the latter in only one paragraph.   Unlike the amended complaint in Flat Panel, Plaintiffs' complaints do not include specific allegations linking each Defendant to a price-fixing conspiracy.   Nor have Plaintiffs explained how the conduct of one

Defendant in steering a customer away from one Plaintiff is related in any way to the conduct of a different Defendant in steering a different customer away from the same or a different Plaintiff.    There is nothing in any of the complaints to support attributing the wrongful conduct of one Defendant to unrelated and independent wrongful conduct of another Defendant.    Lumping together separate and unrelated conduct in this manner does not put Defendants on notice of the grounds for the claims against them.

    This is not to say that I believe Plaintiffs must name, for every body shop and insurer, a customer who was steered by that particular insurer away from that particular body shop.    As the Supreme Court emphasized in Iqbal, a district court's task in determining whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the ... court to draw on its judicial experience and common sense."    556 U.S. at 679.    But, at a minimum, Plaintiffs should allege sufficient facts specific to each Defendant, or at least each corporate family of Defendants, to tie that Defendant to the wrongdoing alleged.    Accordingly, I recommend that all of the complaints be dismissed without prejudice based upon improper group pleading.

    B. Federal Antitrust Claims

    In all of these cases, Plaintiffs bring counts alleging that Defendants engaged in horizontal price-fixing[3] and group boycotts[4] in violation of § 1 of the Sherman Act, 15

---

    [3]  The counts in each case for price fixing under the Sherman Act are: Count I in Case No. 6:14-cv-6006; Count IX in Case No. 6:14-cv-6007; Count VII in Case No. 6:14-cv-6008 and 6:14-cv-6020; Count VII in Case No. 6:14-cv-6009; Count V in Case No. 6:14-cv-6010; Count VI in Case No. 6:14-cv-6011; Count VI in Case No. 6:14-cv-6012 and 6:14-cv-6013; "Count I" of the "Fifth Claim for Relief" in Case No. 6:14-cv-6014; the first unnumbered count in Case No. 6:14-cv-6015; Count I in Case No. 6:14-cv-6018; Count VI in Case No. 6:14-cv-6019; and Count I in Case No. 6:15-cv-6022.

    [4]  The counts in each case for group boycott under the Sherman Act are: Count II in Case No. 6:14-cv-6006; Count X in Case No. 6:14-cv-6007; Count VIII in Case No. 6:14-cv-6008 and 6:14-cv-6020; Count VIII in Case No. 6:14-cv-6009; Count VI in Case No. 6:14-cv-6010; Count VIII in Case No. 6:14-cv-6011; Count VII in Case No. 6:14-cv-6012 and 6:14-cv-6013; "Count II" of the "Fifth Claim for Relief" in Case No. 6:14-cv-6014; the third unnumbered count in Case No. 6:14-cv-6015; Count II in Case No. 6:14-cv-6018; Count VII in Case No. 6:14-cv-6019; and Count II in Case No. 6:15-cv-6022.    There is no "Count VII" in

U.S.C. § 1.   The Washington Plaintiffs have also alleged that Defendants engaged in steering in violation of the Sherman Act.[5]

Defendants argue that Plaintiffs' federal antitrust claims should be dismissed for the reasons stated in the Court's Order in A & E Auto Body, as well as the reasons put forth in the motions to dismiss in that case "and in several other nearly identical cases before the Court."   In A & E Auto Body, the Court dismissed Plaintiffs' amended complaint on the grounds that they had failed to allege facts plausibly suggesting that Defendants had made an agreement.   2015 WL 304048, at *11.   The GEICO Defendants also argue that Plaintiffs' claims are subject to the rule of reason standard, and that Plaintiffs must plausibly allege a relevant market, market power, barriers to entry, anticompetitive effects that outweigh procompetitive benefits, and antitrust injury.

The New Jersey Plaintiffs argue that the Non-GEICO Defendants "make no specific arguments," and that their motion fails to meet the requirements of FED.R.CIV.P. 7(b)(1)(B) because it does not state with particularity the grounds for seeking the order (Case No. 6:14-cv-6012, Doc. 39 at 25; Case No. 6:14-cv-6013, Doc. 41 at 24-25).   The New Jersey Plaintiffs complain that they are "at a loss to respond" because "[d]ozens of motions have been filed in the Florida Action, with numerous arguments proffered."   (Id.). They do, however, address the specific arguments made by the GEICO Defendants.

I disagree with Plaintiffs' suggestion that the Non-GEICO Defendants' motion to dismiss is insufficient.   To be sure, Defendants' passing reference to motions to dismiss filed in other MDL cases is not sufficient to raise the arguments in those motions.   But, Defendants have also argued that the Court should dismiss these complaints, which are

---

Case No. 6:14-cv-6011.
   [5]  The steering count under the Sherman Act is the second unnumbered count in the Washington case (Case No. 6:14-cv-6015).

substantively identical to the Florida amended complaint, for the reasons the Court dismissed the Florida amended complaint.    In my previous reports and recommendations I have recommended the Court dismiss federal antitrust claims that were "indistinguishable from the claims asserted by the plaintiffs in <u>A & E Auto Body</u> ... for the reasons stated in the dismissal order in <u>A & E Auto Body</u>."    <u>See, e.g.</u>, <u>Capitol Body Shop</u>, 2015 WL 859477, at *9.

In the remaining cases, Plaintiffs have incorporated by reference the arguments made in one of the New Jersey cases (No. 6:14-cv-6013), and in their replies, the Non-GEICO Defendants have incorporated by reference their motion to dismiss and their reply from that case.    I do not understand what these Defendants were trying to accomplish by attaching the motion in the New Jersey case to every single reply.    The New Jersey motion says nothing that the Non-GEICO Defendants' motions in the other cases do not.

Upon review, I conclude that Plaintiffs' price fixing and group boycott claims are indistinguishable from those asserted by the plaintiffs in <u>A & E Auto Body</u>.    The Court's reasoning in dismissing the antitrust claims in that case applies with equal force here. Therefore, I recommend that Plaintiffs' counts for price fixing and group boycotts in violation of the Sherman Act be dismissed.

The steering claim in the Washington case does not allege the existence of an agreement to steer, or an attempt or conspiracy to monopolize a part of trade or commerce.    This is a requirement to state a claim under either § 1 or § 2 of the Sherman Act.    Accordingly, I conclude that the Washington Plaintiffs' steering claim under the Sherman Act should also be dismissed.

C. State Antitrust Claims

Plaintiffs in the Michigan,[6] New Jersey,[7] Washington,[8] and Virginia[9] cases allege violations of state antitrust laws.    These state have statutes that are similar to the Sherman Act in that they all outlaw "contract[s]," "combination[s]," and "conspirac[ies]" "in restraint of trade or commerce."    Compare 15 U.S.C. § 1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."); with MICH. COMP. LAWS § 445.772 ("A contract, combination, or conspiracy between 2 or more persons in restraint of, or to monopolize, trade or commerce in a relevant market is unlawful."); N.J. REV. STAT. § 56:9-3 ("Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, in this State, shall be unlawful."); VA. CODE § 59.1-9.5 ("Every contract, combination or conspiracy in restraint of trade or commerce of this Commonwealth is unlawful."); and WRC 19.86.030 ("Every contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is hereby declared unlawful.").    To recover under these state statutes, a plaintiff must plausibly plead the existence of an agreement between the defendants.    Blair v. Checker Cab Co., 558 N.W.2d 439, 442 (Mich. Ct. App. 1996) (noting that Michigan's antitrust law and the Sherman Act both "require similar evidence of concerted action or combination"); Exxon Corp. v. Wagner, 382 A.2d 45, 48 (N.J. App. Div. 1977) ("For there to be a contract, combination or conspiracy in restraint of trade in violation of N.J.S.A. 56:9-3, there must exist a plurality of actors, that is, two or more persons, and concerted action"); Reid v.

---

[6] Count XI in Case No. 6:14-cv-6007.
[7] Count IV in Case No. 6:14-cv-6012 and 6:14-cv-6013.
[8] The fourth unnumbered count in Case No. 6:14-cv-6015.
[9] Count V in Case No. 6:14-cv-6019.

Boyle, 527 S.E.2d 137, 148 (Va. 2000) (dismissing state-law antitrust claim where Plaintiffs "failed to prove the existence of any contract or conspiracy in restraint of trade or commerce"); Boeing Co. v. Sierracin Corp., 738 P.2d 665, 677 (Wash. 1987) ("An illegal combination in restraint of trade requires two factors to be present: (1) two or more actors, and (2) concerted action."). As explained above, see supra Part III.B, Plaintiffs have failed to plead facts raising a plausible inference of an agreement. Therefore, the state-law antitrust claims raised in these cases should be dismissed.

D. Unjust Enrichment and Quantum Meruit

All Plaintiffs assert claims for unjust enrichment and, in all but the Arizona, Missouri, California, and Oregon cases, separate claims for quantum meruit.[10] These claims are based on Plaintiffs' allegations that they were underpaid for parts and services provided to Defendants' insureds and claimants, and that Defendants were unjustly enriched as a result.

"Quantum meruit" is a legal term of ancient vintage that originated in the common-law action of assumpsit. Alternatives Unlimited, Inc. v. New Baltimore City Board of School Commissioners, 843 A.2d 252, 284 (Md. App. 2004); RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 31 cmt. e. It literally means "as much as he deserved." BLACK'S LAW DICTIONARY (10th ed. 2014). "As a measure of recovery, it

---

[10] The counts entitled "Quantum Meruit" are: Count II in Case No. 6:14-cv-6007; Count II in Case No. 6:14-cv-6008 and 6:14-cv-6020; Count II in Case No. 6:14-cv-6009; Count II in Case No. 6:14-cv-6011; Count I in Case No. 6:14-cv-6012 and 6:14-cv-6013; the sixth unnumbered count in Case No. 6:14-cv-6015; Count IV in Case No. 6:14-cv-6018; and Count I in Case No. 6:14-cv-6019. The counts entitled "Unjust Enrichment" are: Count IV in Case No. 6:14-cv-6006; Count III in Case No. 6:14-cv-6007; Count III in Case No. 6:14-cv-6008 and 6:14-cv-6020; Count III in Case No. 6:14-cv-6009; Count III in Case No. 6:14-cv-6011; Count II in Case No. 6:14-cv-6012 and 6:14-cv-6013; the seventh unnumbered count in Case No. 6:14-cv-6015; Count V in Case No. 6:14-cv-6018; Count II in Case No. 6:14-cv-6019; and Count IV in Case No. 6:14-cv-6022. In Count I in Case No. 6:14-cv-6010 the California Plaintiffs allege a single count entitled "Quantum Meruit: Contract Implied in Law, Quasi-Contract, and Unjust Enrichment." In the "First Claim for Relief" in Case No. 6:14-cv-6014, the Oregon Plaintiffs allege a single count entitled "Quantum Meruit/Unjust Enrichment."

means the reasonable value of the work performed or the services rendered by a plaintiff for a defendant." Alternatives Unlimited, 843 A.2d at 291. In addition to being a measure of recovery, quantum meruit is often pled as a cause of action. Murdock-Bryant Constr., Inc. v. Pearson, 703 P.2d 1197, 1201 (Ariz. 1985). Courts and parties have used the term "quantum meruit," along with its lesser-known cousin "quantum valebant," to refer to two types of cases: those where the parties entered an implied-in-fact contract but did not agree on a specific price, and those where the parties had no contract but it would be unjust for the defendant to retain the benefit on the plaintiff's performance without paying for it. Murdock-Bryant, 703 P.2d at 1201; RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 31 cmt. e; see also Candice L. Kovacic, A Proposal to Simplify Quantum Meruit Litigation, 35 Am. U. L. Rev. 547, 553 (1986). In cases that fall into the latter category, courts often invoke the legal fiction that the parties' conduct creates a "contract implied in law" or "quasi-contract." See Alternatives Unlimited, 843 A.2d at 290-91; Campbell v. Tennessee Valley Authority, 421 F.2d 293, 296 (5th Cir. 1969); RESTATEMENT (SECOND) OF CONTRACTS § 4, cmt. b. Liability in these cases "is not in reality contractual in character, but is imposed in the absence of any [agreement] to prevent unjust enrichment." Fidelity & Deposit Co. of Maryland v. Harris, 390 F.2d 402, 409 (9th Cir. 1966) (citing Bayne v. United States, 93 U.S. 642 (1876)).

"Unjust enrichment" is a much newer term in the Anglo-American common-law system. Although courts have long appealed to notions of justice when imposing liability in the absence of an express contract, see 1 Dan B. Dobbs, LAW OF REMEDIES 251 (2d ed. 1993) (citing Lord Mansfield's opinion in Moses v. MacFerlan, 2 Burr. 1005, 97 Eng. Rep. 676 (K.B. 1760)), the idea that quasi-contract is justified by a broader principle of preventing unjust enrichment was first proposed in the late 1800s, see William Albert

Keener, A TREATISE ON THE LAW OF QUASI-CONTRACTS 19-20 (1893) (arguing that the theory of quasi contract "rests upon the doctrine that a man shall not be allowed to enrich himself unjustly at the expense of another"); see also Review, A Treatise on the Law of Quasi-Contracts, 7 Harv. L. Rev. 245 (1893) (noting that Keener's "doctrine of unjust enrichment has not been acknowledged in terms to any great extent by the courts"); Ben Kremer, Review, Restatement Third of Restitution and Unjust Enrichment by the American Law Institute, 35 Melb. U. L. Rev. 1197, 1198 (2011) (describing Keener's treatise as "a seminal work").   Keener's thesis–that liability in quasi-contract rests on the principle that one should not be allowed to enrich himself at the expense of another–has gained "almost universal assent" in academic literature, see Joseph M. Perillo, Restitution in a Contractual Context, 73 Colum. L. Rev. 1208, 1208-09 (1973), and has been repeated in some form by high courts in virtually every state, including the 12 where these 14 cases originated.[11]   It is also the starting point for each of the Restatements of Restitution.   RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 1; RESTATEMENT (FIRST) OF RESTITUTION § 1.

The unjust enrichment principle is the basis not only for "quasi-contract" but also for a host of equitable remedies including constructive trust, subrogation, and equitable lien. 1 Dobbs, LAW OF REMEDIES 565.   Scholars have identified a trend in American law "to affiliate various restitutionary remedies, such as quasi contracts and constructive

---

[11] See Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon, 157 S.W.3d 626, 632-33 (Ky. 2005); Village of Bloomingdale v. CDG Enterprises, Inc., 752 N.E.2d 1090, 1102 (Ill. 2001); Hamm v. Scott, 515 S.E.2d 773, 775 (Va. 1999); Kammer Asphalt Paving Co. v. East China Township Schools, 504 N.W.2d 635, 640 (Mich. 1993); Carr v. Carr, 576 A.2d 872, 880 (N.J. 1990); Lynch v. Deaconess Medical Center, 776 P.2d 681, 683 (Wash. 1989); Murdock-Bryant Constr., Inc. v. Pearson, 703 P.2d 1197, 1201-02 (Ariz. 1985); Opelika Production Credit Ass'n v. Lamb, 361 So.2d 95, 99 (Ala. 1978); J.A. & W.A. Hess, Inc. v. Hazle Township, 350 A.2d 858, 861 (Pa. 1976); Schroeder v. Schaefer, 483 P.2d 818, 821 (Or. 1971); Polk Township v. Spencer, 259 S.W.2d 804, 807 (Mo. 1953); Ruinello v. Murray, 227 P.2d 251, 253 (Cal. 1951).

trusts" with "a common animating principle" of unjust enrichment.    Kelvin H. Dickinson, Divorce and Life Insurance: Post Mortem Remedies for Breach of a Duty to Maintain a Policy for a Designated Beneficiary, 61 Mo. L. Rev. 533, 569-70 (1996); see also 1 Dobbs, LAW OF REMEDIES 564 (stating that "the modern view is that unjust enrichment is a unifying principle" for a broad range of narrow common law and equitable actions).    The Restitution Restatements, published 74 years apart, reflect this trend.    The Restatement (First) of Restitution recognized the common unjust enrichment principle underlying quasi-contract and constructive trust, but was organized into separate parts for each. The Restatement (Third) of Restitution and Unjust Enrichment, by contrast, is organized into four parts, the first stating general principles, the second more specific substantive rules, the third addressing remedies and the fourth defenses.

As is typical in evolving areas of law, some states are faster to adopt changes than others.    Some states retain subsidiary actions like "quantum meruit" or "quasi contract" and require a plaintiff to plead and prove long-established elements of those actions. See, e.g., A & E Auto Body, 2015 WL 304048, at *5 (citing Hull & Co., Inc. v. Thomas, 834 So.2d 904 (Fla. 4th DCA 2003)).    Courts in these states sometimes refer to the action as being for "unjust enrichment."    See id. (citing Hillman Constr. Corp. v. Wainer, 636 So.2d 576, 577 (Fla. 4th DCA 1994)).    These states typically require a showing that the plaintiff "conferred" a benefit on the defendant, and that the defendant "appreciated" or "knew" of the benefit and "accepted" or "retained" it.    They may also focus on whether the plaintiff reasonably expected to receive compensation for the benefit.    Missouri, Virginia, Kentucky, Alabama, and Oregon fall into this category.    See Binkley v. American Equity Mortgage, Inc., 447 S.W.3d 194, 199 (Mo. 2014) ("An unjust enrichment claim requires a showing that: '(1) the plaintiff conferred a benefit on the defendant; (2)

the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances.'"); Schmidt v. Household Finance Corp., II, 661 S.E.2d 834, 838 (Va. 2008) ("To state a cause of action for unjust enrichment, Schmidt had to allege that: (1) he conferred a benefit on Household Finance; (2) Household Finance knew of the benefit and should reasonably have expected to repay Schmidt; and (3) Household Finance accepted or retained the benefit without paying for its value."); Jones v. Sparks, 297 S.W.3d 73, 78 (Ky. App. 2009) ("For a party to prevail under the theory of unjust enrichment, they must prove three elements: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value."); Portofino Seaport Village, LLC v. Welch, 4 So.3d 1095, 1098 (Ala. 2008) ("To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation."); Winters v. County of Clatsop, 210 Or. App. 417, 421 (Or. App. 2007) ("It is well-settled that, to establish unjust enrichment, a plaintiff must establish that (1) the plaintiff conferred a benefit on the defendant; (2) the defendant was aware that it had received a benefit; and (3) under the circumstances, it would be unjust for the defendant to retain the benefit without paying for it.").

By contrast, in California, Michigan, Washington, and Illinois, a plaintiff can establish an unjust enrichment claim by meeting the requirements of section 1 of the Restatements: the defendant was enriched at the plaintiff's expense and the enrichment was unjust.    See Ghirardo v. Antonioli, 924 P.2d 996, 1003 (Cal. 1996) ("Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at

the expense of another.")[12]; AFT Michigan v. Michigan, 846 N.W.2d 583, 660–61 (Mich. App. 2014) ("To sustain an unjust enrichment claim, a plaintiff must demonstrate (1) the defendant's receipt of a benefit from the plaintiff and (2) an inequity to plaintiff as a result." (citing Dumas v. Auto Club Ins. Ass'n, 473 N.W.2d 652, 663 (Mich. 1991)))[13]; Norcon Builders, LLC v. GMP Homes VG, LLC, 254 P.3d 835, 844 (Wash. App. 1st Div. 2011) ("A claim of unjust enrichment requires proof of three elements–'(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment.'" (quoting Young v. Young, 191 P.3d 1258, 1262 (Wash. 2008))); HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc., 545 N.E.2d 672, 679 (Ill. 1989) ("To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.").    Although they use slightly different elements, Arizona courts require a plaintiff to satisfy the Restatement criteria plus "the absence of a remedy provided by law," a requirement which is satisfied by denying that a contract governs the relationship between the parties. See Freeman v. Sorchych, 245 P.3d 927, 936 (Ariz. App. 2011) ("To recover under a

---

[12] California appellate courts often describe these claims as being for restitution, not unjust enrichment.  For example, in Dunkin v. Boskey, 82 Cal. App. 4th 171 (2000), the court explained: "The phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so. 84 Cal. App. 4th at 198 n. 18 (citations and quotations omitted).   See also Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1370 (2010) ("'[T]here is no cause of action in California for unjust enrichment.'   Unjust enrichment is synonymous with restitution." (quoting Melchior v. New Line Productions, 106 Cal. App. 4th 779, 793 (2003))).    This distinction appears to be one of form, rather than function.   See Dunkin, 82 Cal. App. 4th at 198 n. 18 ("'[I]n any event, ... there is no particular form of pleading necessary to invoke the doctrine' of restitution." (quoting Dinosaur Development, Inc. v. White, 216 Cal.App.3d 1310, 1316 (1989))).
[13] Although the elements of an unjust enrichment claim under Michigan law require that the defendant receive a benefit from the plaintiff, Michigan does not require that the benefit be conferred directly by the plaintiff to the defendant.   See In re Automotive Parts Antitrust Litig., 29 F. Supp. 3d 982, 1021 (E.D. Mich. 2014).

theory of unjust enrichment, a plaintiff must demonstrate five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law."); In re Automotive Parts Antitrust Litig., 29 F. Supp. 3d 982, 1016 (E.D. Mich. 2014) ("Arizona courts define the adequate remedy at law element as 'whether there is a contract which governs the relationship between the parties.'" (citing Trustmark Ins. Co. v. Bank One, Ariz., NA, 48 P.3d 485, 491 n. 5 (Ariz. App. 2002))).

Courts in Pennsylvania have advanced both formulations.  Compare Meehan v. Cheltenham Township, 189 A.2d 593, 595 (Pa. 1963) ("Where one party has been unjustly enriched at the expense of another, he is required to make restitution to the other.  In order to recover, there must be both (1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied."); with Mitchell v. Moore, 729 A.2d 1200, 1203 (Pa. Super. 1999) ("The elements necessary to prove unjust enrichment are: '(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'" (quoting Schenck v. K.E. David, Ltd., 666 A.2d 327, 328 (Pa. Super. 1995))).

Finally, New Jersey takes a hybrid approach.  Under New Jersey law, an unjust enrichment plaintiff must show not only that the defendant was enriched and that the enrichment was unjust, but also that the plaintiff "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights."  VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J 1994) (citations omitted).

Despite these differences, there is a common set of basic elements for unjust enrichment claims in these states.    To recover, a plaintiff must show at least that the defendant obtained a benefit at the plaintiff's expense and that the defendant's enrichment was "unjust" or "inequitable."

1. Benefit

Case law differs from state to state regarding what counts as a "benefit" (or an "enrichment") for purposes of an unjust enrichment claim.    In A & E Auto Body, the Court held that under Florida law, a third party who renders a benefit to an insured or claimant that the insurance company is ultimately responsible for paying for does not "confer" a benefit on the insurance company for purposes of an unjust enrichment claim.    2015 WL 304048, at *5 (citing Adventist Health System/Sunbelt, Inc. v. Medical Savings Ins. Co., 2004 WL 6225293, at *6 (M.D. Fla. Mar. 8, 2004)).    Adventist, in turn favorably cited (among other cases) Myrtle Beach Hospital, Inc. v. City of Myrtle Beach, 532 S.E.2d 868 (S.C. 2000), where the South Carolina Supreme Court rejected a quantum meruit claim by a hospital that provided uncompensated or undercompensated medical services to pre-trial detainees against the city that housed them.    In Myrtle Beach, the court reasoned that the detainees, and not the city, received and retained the benefits conferred by the hospital.    Id. at 873.

But other courts define "benefit" more broadly.    In Emergency Physicians Integrated Care v. Salt Lake County, 167 P.3d 1080 (Utah 2007), the Utah Supreme Court explicitly rejected the South Carolina Supreme Court's holding in Myrtle Beach and concluded that a jailer did benefit from the provision of emergency medical care to inmates under his charge.    Id. at 1085.    The New Jersey Supreme Court reached a similar conclusion in St. Barnabas Medical Center v. County of Essex, 543 A.2d 34 (N.J.

1988).[14]   And, in Adventist the court noted (and disagreed with) a Pennsylvania appellate decision holding that a hospital conferred a benefit on a managed care company by providing health care services to the company's members.   2004 WL 6225293, at *5 n.7 (citing Temple Univ. Hospital, Inc. v. Healthcare Mgmt. Alternatives, Inc., 832 A.2d 501, 507-08 (Pa. Super. Ct. 2003)).

Defendants urge the Court to adopt the reasoning of A & E Auto Body, Adventist, and Myrtle Beach and dismiss Plaintiffs' quantum meruit and unjust enrichment claims on this basis.   However, in several of these cases Defendants cite little or no state-specific authority to advance their argument that the relevant states would interpret "benefit" narrowly, like Florida and South Carolina, rather than broadly, like Utah, Pennsylvania, New Jersey[15] and the comments to the Restitution Restatements.   Because the states are divided on this issue, and because the complaints must be dismissed on other grounds, I do not address this issue on a state-by-state basis in this report and recommendations.[16]

---

[14]   The New Jersey Plaintiffs interpret St. Barnabas to mean that whenever a plaintiff performs a duty owed by a defendant to a third party, the defendant is not only enriched, but *unjustly* enriched at the plaintiff's expense (Case No. 6:14-cv-6013, Doc. 41 at 4).   But, in St. Barnabas, the New Jersey Supreme Court emphasized the fact that the hospital was under a duty, imposed by state regulation, to treat the indigent inmates.   Id. at 38.   Here, the New Jersey Plaintiffs were under no duty to repair the vehicles belonging to Defendants' insureds and claimants.   Additionally, the county in St. Barnabas requested that the hospital provide medical care to the inmates; here, by contrast, the New Jersey Plaintiffs have not pled that Defendants or Defendants' agents asked them to perform any repairs.

[15]   Some case law from the District of New Jersey follows the no-benefit rule stated in Adventist and applied by this Court in the Florida case.   See, e.g., Broad Street Surgical Center, LLC v. Unitedhealth Group, Inc., Civ. No. 11-2775(JBS/JS), 2012 WL 762498, at *8 (D.N.J. Mar. 6, 2012).   Whether Broad Street can be reconciled with St. Barnabas on this issue is a question best left for a later time.

[16]   In their memorandum in support of their motion to dismiss in the Kentucky case and their replies in the Alabama, New Jersey, and Washington cases, the GEICO Defendants suggest that Plaintiffs can never establish that performance of repairs constitutes a benefit to the insurance companies because "[i]t is common knowledge that insurance companies have a duty to pay for the damage to a vehicle, not to repair the vehicle."   (Case No. 6:14-cv-6009, Doc. 27 at 4 n. 2; Case No. 6:14-cv-6013, Doc. 43 at 4 n. 3; Case No. 6:14-cv-6015, Doc. 24 at 3 n. 2; Case No. 6:14-cv-6018, Doc. 117 at 12, n. 2).   This is hardly "common knowledge" or "obvious," and may not be true.   GEICO's standard auto insurance policy for the state of Kentucky for example, expressly gives GEICO an option to "repair or replace the damaged or stolen

- 23 -

2. Failure to Bargain

Assuming Plaintiffs' performance of repairs for Defendants' insureds and claimants constitutes a benefit, the unjust enrichment claims must still be dismissed because Plaintiffs have failed to allege facts showing that it would be unjust to allow Defendants to retain any benefit Plaintiffs may have conferred.   The Restatement (Third) of Restitution and Unjust Enrichment explains that "[t]here is no liability in restitution for an unrequested benefit voluntarily conferred, unless the circumstances of the transaction justify the claimant's intervention in the absence of contract."   Id. § 2(3).   Comment (d) to this section explains:

> Instead of proposing a bargain, the restitution claimant first confers a benefit, then seeks payment for its value.   When this manner of proceeding is unacceptable–as it usually is, if the claimant neglects an opportunity to contract–a claim based on unjust enrichment will be denied.
>
> The limitation of § 2(3) is traditionally expressed by denying restitution to a claimant characterized as "officious," an "intermeddler," or a "volunteer."   This section states the same rule, substituting a functional explanation for the familiar epithets.   Because contract is strongly preferred over restitution as a basis for private obligations, restitution is not usually available to a claimant who has neglected a suitable opportunity to make a contract beforehand.

As Judge Posner explained in Indiana Lumbermens Mutual Insurance Co. v. Reinsurance Results, Inc.,

> One who voluntarily confers a benefit on another, which is to say in the absence of a contractual obligation to do so, ordinarily has no legal claim to be compensated.   E.g., In re Grabill Corp., 983 F.2d 773, 776 (7th Cir.1993); American Law Institute, Restatement (First) of Restitution § 2 (1937).   If

---

property" instead of "pay[ing] for the loss."    (See E.D. Ky. Case No. 5:14-cv-363-DCR-RW, Doc. 1-3 at 12). In any event, the Court cannot consider "matters outside the pleadings" without converting the motion to one for summary judgment, Fed. R. Civ. P. 12(d), and even then, unsworn assertions in a brief or memorandum of law are not evidence, Travaglio v. American Express Co., 735 F.3d 1266, 1270 (11th Cir. 2013).

> while you are sitting on your porch sipping Margaritas a trio of
> itinerant musicians serenades you with mandolin, lute, and
> hautboy, you have no obligation, in the absence of a contract,
> to pay them for their performance no matter how much you
> enjoyed it; and likewise if they were gardeners whom you had
> hired and on a break from their gardening they took up their
> musical instruments to serenade you.    When voluntary
> transactions are feasible (in economic parlance, when
> transaction costs are low), it is better and cheaper to require
> the parties to make their own terms than for a court to try to fix
> them-better and cheaper that the musicians should negotiate
> a price with you in advance than for them to go running to
> court for a judicial determination of the just price for their
> performance.    In contrast, "when a businessman renders a
> valuable service in circumstances in which compensation
> would normally be expected, and though he is acting without
> the knowledge or consent of the recipient of the service there
> is no alternative because transacting with the owner would be
> infeasible (maybe the owner can't be located), an award of
> compensation is appropriate to encourage a valuable activity."
> Nadalin v. Automobile Recovery Bureau, Inc., 169 F.3d 1084,
> 1086 (7th Cir.1999). That is the case of prohibitively high
> transaction costs. This is not such a case.

513 F.3d 652, 656-57 (7th Cir. 2008).    Accord 1 Dobbs, LAW OF REMEDIES § 4.9(4) ("If the

parties could have contracted but did not, the plaintiff generally is denied recovery of the

non-cash benefit.").

Courts in the applicable states deny restitution to those who confer benefits

officiously.[17]    Moreover, some states require unjust enrichment plaintiffs to show a

reasonable expectation of compensation, see, e.g., Portofino, 4 So.3d at 1098 (Alabama),

a requirement that effectively denies recovery to the officious intermeddler.

---

[17]    See, e.g., Allstate Ins. Co. v. Reeves, 440 So.2d 1086, 1089 (Ala. App. 1983); Gould v. American Water Works Service Co., 245 A.2d 14, 16 (N.J. 1969); Watkins v. Richmond College Trustees, 41 Mo. 302, 308-09 (1867); see also Lynch v. Deaconess Medical Ctr., 776 P.2d 691, (Wash. 1989) (an unjust enrichment plaintiff "cannot be a mere volunteer"); Freeman v. Sorchych, 245 P.3d at 936-37 (under Arizona law, plaintiff must show that benefit was not conferred officiously); Stein v. Simpson, 230 P.2d 816, 821 (Cal. 1951) ("A person who officiously confers a benefit upon another is not entitled to restitution."); Plastics & Equipment Sales Co. v. DeSoto, Inc., 415 N.E.2d 492, 498 (Ill. App. 1st Dist. 1980) ("Quasi-contractual relief is not available, however, where the benefit is conferred officiously....").

There is no allegation in any of these complaints that Defendants (rather than their insureds or claimants) asked any of the Plaintiffs to perform repairs.    Plaintiffs must therefore plead facts sufficient to support a conclusion that their failure to bargain with Defendants before performing repairs was justified under the circumstances.    The facts pled by Plaintiffs suggest the opposite is true.    Plaintiffs do not allege that it was impossible or even impractical for them to bargain with Defendants over price before agreeing to perform repairs.    Cf. K.A.L. v. Southern Medical Business Services, 854 So.2d 106, 107-09 (Ala. App. 2003) (patient liable to hospital for services rendered when patient was unconscious).    Nor do they allege that agreeing to perform and performing any particular repairs was necessary to discharge a legal duty of their own or to otherwise protect their own interests.    Cf. Temple Univ. Hospital, 832 A.2d at 515-16 (allowing unjust enrichment claim by hospital against managed care organization, because the hospital was required to provide emergency medical care to the organization's members under the federal Emergency Medical Treatment and Active Labor Act).    They also do not allege that they performed the repairs on account of any good faith mistake of fact. Cf. Herman v. Jackson, 405 S.W.2d 9, 11-12 (Ky. App. 1966) (allowing recovery to plaintiff who performed under mistaken belief that the parties had a contract).    On the contrary, Plaintiffs' complaints allege that they knew Defendants would not pay what they were asking for.    See Capitol Body Shop, 2015 WL 859477, at *6 ("Defendants' repeated and persistent refusal to pay the amounts demanded by Plaintiffs makes unreasonable any expectation on the part of Plaintiffs that Defendants would abruptly begin paying the amounts Plaintiffs believe their services are worth."); Blue Ash Auto Body, Inc. v. Progressive Casualty Ins. Co., 2011-Ohio-5785, at ¶ 12, 2011 WL 5444201, at *3 (Ohio App. Nov. 10, 2011) (auto body shops could not demonstrate that any enrichment of

insurance company was unjust, where shops entered into agreements with insureds knowing in advance insurance company's estimates for the work and were free to refuse to do the work).

The fact that insureds and claimants under Defendants' policies asked Plaintiffs to perform repairs does not justify Plaintiffs' failure to bargain separately with Defendants. As Dobbs explains in his treatise on remedies,

> A may contract with B but not with C, although the three are involved in a single project.    The parties could have contracted each with both others, but they did not.    The separate contracts convey clearly the limited kinds of liability and exposure each party has in mind.    Each party may benefit by the work or payments of both other parties, but the parties understand that their responsibilities and rights are only those set up by the contract.    Respect for that contract arrangement requires the courts to refuse restitution between the parties who did not contract with each other.

1 Dobbs, LAW OF REMEDIES § 4.9(4), p. 697.    In other words, "[a] plaintiff is not entitled to employ the legal fiction of quasi-contract to 'substitute one promisor or debtor for another.'"    Callano v. Oakwood Park Homes Corp., 219 A.2d 332, 335 (N.J. App. Div. 1966) (quoting Cascaden v. Magryta, 225 N.W. 511, 512 (Mich. 1929)); see also Chandler v. Washington Toll Bridge Authority, 137 P.2d 97, 102 (Wash. 1943); Roman Mosaic & Tile Co. v. Vollrath, 313 A.2d 305, 307 (Pa. Super. 1973) (both citing Cascaden for the same proposition).[18]    For this reason, I recommend that all of Plaintiffs' unjust enrichment claims be dismissed.

---

[18]  Plaintiffs' claims also fail under § 25 of the Restatement (Third) of Restitution and Unjust Enrichment.    Section 25 of the Restatement provides that a plaintiff will have a restitution claim against a defendant who benefits from the plaintiff's uncompensated performance of an obligation to a third party only when: (a) liability in restitution will not subject the defendant to a forced exchange; (b) absent liability in restitution, the plaintiff will not be compensated for the performance and the defendant will retain the benefit of it without paying for it; and (c) restitution will not subject the defendant to an obligation from which the parties understood the defendant would be free.    Comment b to this section explains that the second requirement will not be satisfied where the plaintiff sues the defendant for restitution "instead of pursuing a viable contract claim" against the other party to the plaintiff's contract.    Nowhere in any of these complaints

E. Legally Independent Quantum Meruit Claims

In the cases in which Plaintffs assert separate claims entitled "quantum meruit," they make clear that these quantum meruit claims are based on the unjust enrichment principle (Compare Case No. 6:14-cv-6011, Doc. 1, ¶ 148 ("Quantum meruit rests upon the equitable principle that a party is not allowed to enrich itself at the expense of another"); with id. ¶ 152 ("A quasi-contract, or constructive contract, is based on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another.")).    Consequently, there is significant overlap between Plaintiffs' unjust enrichment and quantum meruit claims in the cases in which they assert both.

Michigan and Pennsylvania courts have held that claims for "quantum meruit" and "unjust enrichment" are the same.    Shafer Electric & Constr. v. Mantia, 96 A.3d 989, 993 (Pa. 2014) (recognizing that "quantum meruit is essentially a claim for unjust enrichment"); Morris Pumps v. Centerline Piping, Inc., 729 N.W.2d 898, 904 (Mich. App. 2006).    Arizona courts describe "quantum meruit" as the measure of recovery in unjust enrichment cases.    See, e.g., Murdock-Bryant Constr., Inc. v. Pearson, 703 P.2d 1197, 1202 (Ariz. 1985) (explaining that a person may be entitled "to restitution in quantum meruit to prevent ... unjust enrichment").    Thus, the quantum meruit claims in the Michigan, Pennsylvania, and Arizona cases have no independent legal significance and should be dismissed for the same reasons as the unjust enrichment claims in those cases.

The six remaining states recognize claims for quantum meruit with elements at least formally different from claims for unjust enrichment.    I discuss these states in turn.

_____

do Plaintiffs allege that they cannot recover the contract price for the repairs from Defendants' insureds and claimants.

1. Alabama

In Mantiply v. Mantiply, 951 So.2d 638, 656 (Ala. 2006), the Alabama Supreme Court explained that "[r]ecovery on a theory of quantum meruit arises when a contract is implied."   The court identified "'two kinds of implied contracts–those implied in fact and those implied in law.   Contracts implied in law are more properly described as quasi or constructive contracts where the law fictitiously supplies the promise [to pay for the labor or services of another] to prevent a manifest injustice or unjust enrichment, etc.'" Id. (quoting Green v. Hospital Building Authority of Bessemer, 318 So.2d 701, 704 (Ala. 1975)).   Thus, "quantum meruit" under Alabama law is used to refer both to situations involving contracts implied in fact, which are based on agreement, and contracts implied in law, which are not based on agreements but are legal fictions imposed to prevent unjust enrichment.   To the extent that the Alabama Plaintiffs' quantum meruit claim is based on a contract implied in fact, it must be dismissed because they failed to allege "'mutual assent to terms essential to the contract.'"   Id. (quoting Steiger v. Huntsville City Board of Education, 653 So.2d 975, 978 (Ala. 1995)).   To the extent that the Alabama Plaintiffs' quantum meruit claim is based on a contract "implied in law," it is functionally the same as their unjust enrichment claim and must be dismissed for the reasons explained in the previous section.

2. Illinois

Illinois courts recognize a cause of action for quantum meruit where "(1) [the plaintiff] performed a service to benefit the defendant, (2) [the plaintiff] did not perform this service gratuitously, (3) [the] defendant accepted this service, and (4) no contract existed to prescribe payment for this service."   Installco Inc. v. Whiting Corp., 784 N.E.2d 312, 317-18 (Ill. App. 1st Dist. 2002).   The plaintiff must show that it would be unjust for the

defendant to retain any benefit without paying.   Stark Excavating, Inc. v. Carter Constr. Services, Inc., 967 N.E.2d 465, 475 (Ill. App. 4th Dist. 2012).   The Illinois Plaintiffs have failed to plead facts showing that it would be unjust to deny them compensation from Defendants for any unrequested benefits they provided Defendants.   Therefore, the Illinois Plaintiffs' quantum meruit claim should be dismissed.

     3. New Jersey

     New Jersey courts recognize a cause of action for quantum meruit that is at least nominally (though probably not functionally) different from a claim for unjust enrichment. "To recover under a theory of quantum meruit, a plaintiff must establish: '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'"   Starkey, Kelley, Blaney & White v. Estate of Nicolaysen, 796 A.2d 238, 242–43 (N.J. 2002).   In addition, the expectation of compensation must be reasonable.   Weichert Co. Realtors v. Ryan, 608 A.2d 280, 285 (N.J. 1992).

     The New Jersey Plaintiffs could not have reasonably expected Defendants to pay them what they thought their services were worth, given Defendants' persistent refusal to do so in the past.   To the extent that the New Jersey Plaintiffs provided a service to Defendants, the facts alleged show that it was not provided at Defendants' request or by mistake, or that doing the repairs without first negotiating price with Defendants was necessary to protect the interests of Plaintiffs, Defendants, or any third parties.   Cf. Cohen v. Home Ins. Co., 552 A.2d 654, 659 (N.J. App. Div. 1989) ("'A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances

making such action necessary for the protection of the interests of the other or of third persons.'" (quoting RESTATEMENT (FIRST) OF RESTITUTION § 112)).   Accordingly, the New Jersey Plaintiffs' quantum meruit claims must be dismissed.

    4. Kentucky

    At least one Kentucky appellate court has recognized quantum meruit and unjust enrichment as legally distinct claims.   See JP White, LLC v. Poe Companies, LLC, Nos. 2010-CA-000267-MR, 2010-CA-000299-MR, 2011 WL 1706751 (Ky. App. May 6, 2011).   However, as the Non-GEICO Defendants point out in their reply, Kentucky courts often conflate quantum meruit and unjust enrichment (See Case No. 6:14-cv-6018, Doc. 118 at 3 n. 3 (citing Quadrille Business Systems v. Kentucky Cattlemens Ass'n, 242 S.W.3d 359, 365 (Ky. App. 2007); Community Ties of America, Inc. v. NDT Care Services, LLC, No. 3:12-cv-00429-CRS, 2015 WL 520960, at *18 (W.D. Ky. Feb. 9, 2015))).   Assuming arguendo that JP White accurately reflects Kentucky law on this point, the Kentucky Plaintiff's quantum meruit claim still fails.

    In Kentucky, to recover on a quantum meruit theory, the plaintiff must show (1) that it rendered valuable services or furnished materials; (2) to the defendant; (3) that the services were rendered with defendant's knowledge or consent, or alternatively that the defendant accepted or received them; (4) under such circumstances as reasonably notified the defendant that the plaintiff expected to be paid by the defendant.   JP White, 2011 WL 1706751, at *5 (quoting Quadrille Business Systems v. Kentucky Cattlemens Ass'n, Inc., 242 S.W.3d 359, 366 (Ky. App. 2007)).   In JP White, the court said that "recovery under quantum meruit does not depend upon the conferment or retention of a benefit," whereas unjust enrichment requires that "a benefit ... be conferred and retained." Id.

The Kentucky Plaintiff's quantum meruit claim fails because it has not alleged that it rendered any services or furnished any materials to Defendants (as opposed to Defendants' insureds and claimants).    The services provided to insureds and claimants may (or may not, depending on state law) have conferred a "benefit" on Defendants that would satisfy the first element of an unjust enrichment claim, but conferral of a benefit is not one of the elements of a quantum meruit claim under Kentucky law.

5. Washington

Under Washington law, a claim for quantum meruit is unquestionably different than one for unjust enrichment.    In Young v. Young, 131 P.3d 1258 (Wash. 2008), the Washington Supreme Court "clarif[ied] the distinction between 'unjust enrichment' and 'quantum meruit.'"    Id. at 1261.    The court explained that "[u]njust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it," while "'quantum meruit' is the method of recovering the reasonable value of services provided under a contract implied in fact."    Id. at 1262.    "[T]he elements of a contract implied in fact are: (1) the defendant requests work, (2) the plaintiff expects payment for the work, and (3) the defendant knows or should know the plaintiff expects payment for the work."    Id. at 1263. The Washington Plaintiffs fail to state a claim for quantum meruit under Washington law because they have not pled that any Defendant–as distinct from an insured–requested that any Plaintiff perform any repairs.

6. Virginia

Courts in Virginia have listed two different sets of elements for "quantum meruit" claims.    Under the first line of authority, the elements of a quantum meruit claim largely parallel those of an unjust enrichment claim.    See, e.g. Centex Constr. v. Acstar Ins. Co.,

448 F. Supp. 2d 697, 708 (E.D. Va. 2006) (listing the elements of a quantum meruit claim as (1) a benefit conferred by the plaintiff on the defendant; (2) the defendant's knowledge of the conferring of the benefit; and (3) acceptance or retention of the benefit under circumstances that would make it unjust to retain it without paying for its value).   The Virginia Plaintiffs' claim fails under this first line of reasoning for the same reason their unjust enrichment claim fails: they have not alleged facts showing that it would be unjust to deny them compensation from Defendants for any unrequested (by Defendants) benefits they conferred on Defendants.

The second line of authority recognizes quantum meruit claims where the plaintiff has shown that "(i) he rendered valuable services, (ii) to the defendant, (iii) which were requested and accepted by the defendant, (iv) under such circumstances as reasonably notified the defendant that the claimant, in performing the work, expected to be paid by the defendant."   Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp., 961 F.2d 489, 491 (4th Cir. 1992).   The Virginia Plaintiffs have not stated a claim under this second line of cases because they have not pled that any Defendant requested any Plaintiff to perform any repair.

F. Tortious Interference

All Plaintiffs assert claims for tortious interference with business relationships or prospective advantage.[19]   The elements of these claims differ slightly from state to state,

---

[19]   The tortious interference counts are: Count III in Case No. 6:14-cv-6006; Count V in Case No. 6:14-cv-6007; Count V in Case No. 6:14-cv-6008 and 6:14-cv-6020; Count V in Case No. 6:14-cv-6009; Count II in Case No. 6:14-cv-6010; Count V in Case No. 6:14-cv-6011; Count V in Case No. 6:14-cv-6012 and 6:14-cv-6013; the "Third Claim for Relief" in Case No. 6:14-cv-6014; the eighth unnumbered count in 6:14-cv-6015; Count III in Case No. 6:14-cv-6018; Count IV in Case No. 6:14-cv-6019; and Count III in Case No. 6:15-cv-6022.   The titles vary, with some complaints specifying the interference as being with "Business Relations" and others with "Prospective Economic Advantage," but the substance of each claim is the same.

but in virtually every state a plaintiff must show that the defendant intentionally and improperly interfered with the plaintiff's prospective contractual relationship and that as a result, the plaintiff failed to reap the benefits of the prospective relationship.    See RESTATEMENT (SECOND) OF TORTS § 766B.    Arizona, Michigan, California, Illinois, Washington, Virginia, and Missouri include as an additional element that the defendant must know of the prospective relationship.    Wagenseller v. Scottsdale Memorial Hospital, 710 P.2d 1025, 1041 (Ariz. 1985), superseded by statute on other grounds as stated in, Powell v. Washburn, 125 P.3d 373 (Ariz. 2006); Cedroni Ass'n, Inc. v. Tomblinson, Harburn Assocs., Architects & Planners, Inc., 821 N.W.2d 1, 3 (Mich. 2012); Blank v. Kirwan, 703 P.2d 58, 70 (Cal. 1985); Callis, Papa, Jackstadt & Halloran, O.C. v. Norfolk & Western Ry., 748 N.E.2d 153, 161 (Ill. 2001); Pacific Northwest Shooting Park Ass'n v. City of Sequim, 144 P.3d 276, 280 (Wash. 2006); Glass v. Glass, 32 S.E.2d 69, 76-77 (Va. 1985); Community Title Co. v. Roosevelt Federal Savings & Loan Ass'n, 796 S.W.2d 369, 372 (Mo. 1990).

Defendants make several arguments for dismissal of the tortious interference claims.    First, depending on the state, they either assert a privilege to interfere in the relationships between Plaintiffs and prospective customers because they would ultimately be responsible for paying the cost of repairs, or argue that any interference under these circumstances was not improper.    Second, they argue that Plaintiffs' tortious interference claims should be dismissed because Plaintiffs failed to identify specific customers with whom Defendants interfered.    In the same vein, Defendants argue that Plaintiffs' use of group pleading warrants dismissal of the tortious interference claims.    Lastly, Defendants argue that heightened pleading requirements apply to the tortious

interference claims, and that the claims should be dismissed because Plaintiffs failed to plead them with particularity.   I address each of these arguments in turn.

1. Improper Interference/Privilege

The most significant difference between the states in this area of law is the way in which they determine when interference is improper.   Arizona, Pennsylvania, New Jersey, and Kentucky use the multi-factor test outlined in the Restatement (Second) of Torts § 767.[20]   Wagenseller, 710 P.2d at 1043; Maverick Steel Co. v. Dick Corp./Barton Malow, 54 A.3d 352, 355 (Pa. Super. 2012); Nostrame v. Santiago, 61 A.3d 893, 901 (N.J. 2013); NCAA ex rel. Bellarmine College v. Hornung, 754 S.W.2d 855, 858 (Ky. 1988).   Michigan, Oregon, and Washington allow recovery where the defendant has an improper purpose or employs improper means.   Advocacy Organization for Patients & Providers v. Auto Club Ins. Ass'n, 670 N.W.2d 569, 580 (Mich. App. 2003) ("The improper interference can be shown by either proving (1) the intentional doing of an act wrongful per se, or (2) the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiffs' contractual right or business relationship."); Top Service Body Shop, Inc. v. Allstate Ins. Co., 582 P.2d 1365, 1370-71 (Or. 1978); Pacific Northwest, 144 P.3d at 280.   Virginia allows recovery for tortious interference with prospective contracts only when improper methods are used.   Peterson v. Cooley, 142 F.3d 181, 186 (citing Duggin v. Adams, 360 S.E.2d 832, 836 (Va. 1987)).

At least some of the conduct alleged by Plaintiffs in their complaints qualifies as improper interference under the law of each of these states.   For instance, all Plaintiffs

---

[20] The factors are: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties. Id.

allege that Defendants made misrepresentations about Plaintiffs' integrity and the quality of their work.   Making false and disparaging statements about another's business is tortious in and of itself, and such conduct, if properly alleged, should survive a motion to dismiss in states that follow the Restatement as well as states that use an improper means test.

Other states cast the impropriety requirement in terms of "justification" or "privilege."   Some Pennsylvania courts list "the absence of privilege or justification on the part of the Defendant" among the elements for the tort, see, e.g., Foster, 2 A.3d at 655, although it appears that a showing of impropriety based on the Restatement factors would satisfy this element, see Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 393 A.2d 1175, 1184 (Pa. 1978) (using Restatement factors for determining whether conduct is "improper" to evaluate whether conduct is privileged).

Under Illinois law, a party acting "to enhance its own business interests ... has a privilege to act in a way that may harm the business expectancy of others."   Curt Bollock Builders, Inc. v. H.S.S. Development, Inc., 586 N.E.2d 1284, 1290 (Ill. App. 4th Dist. 1992).   In Illinois, the privilege to interfere is greater with respect to prospective contracts than it is with respect to existing contracts.   Id.   Still, acts taken pursuant to the privilege must take a socially sanctioned form.   Miller v. Lockport Realty Group, Inc., 878 N.E.2d 171, 176 (Ill. App. 1st Dist. 2007).   Under Illinois law, privilege is an affirmative defense. General Motors Corp. v. State Motor Vehicle Review Board, 862 N.E.2d 209, 220 (Ill. 2007).   By contrast, Missouri requires a plaintiff to "produce substantial evidence to establish lack of justification," a burden which is met if "the defendant act[ed] with an improper purpose and s[ought] not only to further his own interests, but in doing so employs improper means."   Community Title Co., 796 S.W.2d at 372.

Under Pennsylvania, Illinois and Missouri law, well-pled allegations that Defendants made false and defamatory statements about Plaintiffs' businesses should be sufficient to survive a motion to dismiss.    See Topper v. Midwest Division, Inc., 306 S.W.3d 117, 126 (Mo. App. W. Dist. 2010) ("Misrepresentations and defamation certainly constitute improper means that serve to destroy any justification the defendants had."); Soderlund Bros., Inc. v. Carrier Corp., 663 N.E.2d 1, 10 ("As noted above, acts of competition which are never privileged include fraud, deceit, intimidation or deliberate disparagement.").

Alabama uniquely includes an element that the defendant be "a stranger" to the interfered-with relationship.    White Sands Group, L.L.C. v. PRS II, LLC, 32 So.3d 5, 14 (Ala. 2009).    "'One is not a stranger to the contract just because one is not a party to the contract.'"   Tom's Foods, Inc. v. Carn, 896 So.2d 443, 454 (Ala. 2004) (quoting Atlanta Market Center Mgmt. Co. v. McLane, 503 S.E.2d 278, 282 (Ga. 1998)).    If the parties are part of "a comprehensive interwoven set of contracts," they are not strangers.    Id. at 454–55.[21]    All of the Defendants argue that they are not strangers to the relationships between Plaintiffs and the insureds and claimants whose vehicles Plaintiffs repaired (Case No. 6:14-cv-6009, Doc. 23 at 23-24, Doc. 24 at 9-12).    The Non-GEICO Defendants cite Kirby's Spectrum Collision, Inc. v. Gov't Employees Ins. Co., 744 F. Supp. 2d 1220 (S.D. Ala. 2010), where a federal district court in Alabama rejected a tortious interference claim materially indistinguishable from the claim asserted by the Alabama Plaintiffs on the ground that an insurer was not a stranger to the relationship between the body shop and the insurer's insureds and third-party claimants.    Id. at 1234–

---

[21] Alabama also recognizes an affirmative defense of justification in tortious interference cases, and a competitor's privilege to interfere.   White Sands, 32 So.3d at 12; Tom's Foods, 896 So.2d at 457-58. However, the privilege does not allow the use of improper means.   Tom's Foods 896 So.2d at 458.

36.    The Alabama Plaintiffs do not respond to this argument or address the stranger requirement in their brief.    I agree with the analysis of Alabama law in <u>Kirby's Spectrum Collision</u> and recommend dismissal of the tortious interference claim in the Alabama case on this basis.

2. Prospective Contractual Relationship

Another point of difference between the laws of the different states is the level of specificity and certainty required before a prospective contractual relationship will be protected from interference.    Arizona, Michigan, and Illinois allow a plaintiff to state a claim for tortious interference with prospective contractual relationships based on interference with an identifiable class of customers.    <u>Dube v. Likins</u>, 167 P.3d 93, 101 (Ariz. App. 2007); <u>Lucas v. Monroe County</u>, 203 F.3d 964, 979 (6th Cir. 2000) (citing <u>Schipani v. Ford Motor Co.</u>, 203 N.W.2d 307, 314 (Mich. App. 1981)); <u>Downer's Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.</u>, 546 N.E.2d 33, 37 (Ill. App. 2d Dist. 1989).    By contrast, Washington expressly requires specific, identifiable third parties, <u>Pacific Northwest</u>, 144 P.3d at 281 & n. 2, and Virginia requires a "*specific*, *existing* contract or business expectancy*," <u>Masco Contractor Services East, Inc. v. Beals</u>, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003) (emphasis in original).[22]    Alabama law requires "the existence of a protectable business relationship," and there is no support in Alabama case law for "identifiable class" tortious interference claims.    <u>See</u> <u>Hope for Families &</u>

---

[22] Plaintiff cites <u>AWP, Inc. v. Commonwealth Excavating, Inc.</u>, No. 5:13cv031, 2013 WL 3830500, at *8 (W.D. Va. 2013), in support of its argument that it can plead a tortious interference claim by alleging nothing more than interference with its customer base generally.    In <u>AWP</u>, the plaintiff alleged that the defendant poached four "specific customers" with whom the plaintiff expected to reach an agreement.    All Plaintiffs have offered in these cases are general allegations that Defendants interfered with a broadly defined class of potential customers.    Indeed, the facts of this case are much closer to those in the case the <u>AWP</u> court distinguished.    Like the plaintiff in <u>Gov't Employees Ins. Co. v. Google</u>, 330 F. Supp. 2d 700 (E.D. Va. 2004), the Virginia Plaintiffs' tortious interference claim is "founded upon mere speculation that some unidentified potential ... customers" might take their business elsewhere.    <u>AWP</u>, 2013 WL 3830600, at *8 (citing <u>GEICO</u> 330 F. Supp. 2d at 705-06).

Community Service, Inc. v. Warren, 721 F. Supp. 2d 1079, 1185-88 (M.D. Ala. 2010);

Pouncy v. Vulcan Materials Co., 920 F. Supp. 1566, 1585 (N.D. Ala. 1996).   In the

remaining states, the situation is less clear, as there is either no or very limited case law

on the issue, or the parties cite conflicting cases.

      3. Group Pleading

      Even in those states that allow a plaintiff to establish a claim for tortious

interference with business relationships or prospective economic advantage based on

interference with an identifiable class of customers, rather than specific customers, a

plaintiff must still plead the claim with sufficient factual detail to satisfy the requirements of

Rule 8(a).   For the reasons I have already explained, all of the Plaintiffs' complaints fall

short of this standard because they attribute "'allegations of wrongdoing ... collectively to

every Defendant.'"   Supra, Part III.A (quoting Case No. 6:14-cv-310, Doc. 110 at *2).

Absent well pled allegations that the Defendants joined in a conspiracy or acted in

concert, liability for tortious interference must be established on an individualized basis.

As the Court explained in its Orders dismissing the Tennessee, Utah, and Louisiana

actions, "[a] general allegation that some unidentified Defendants–or all Defendants–

interfered with some unidentified customers of some unnamed Plaintiff does not satisfy

the requirements of Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868

(2009)."   Brewer Body Shop, __ F. Supp. 3d at __, 2015 WL 1911418, at *1; Alpine

Straightening Systems, 2015 WL 1911635, at *1; Parker Auto Body, Case No. 6:14-cv-

6004, Doc. 118 at 3; Southern Collision, 2015 WL 1911768, at *1.   Because none of the

Plaintiffs have adequately pled their tortious interference claims, I recommend the Court

dismiss all of these claims.

4. Particularized Pleading

In several cases, Defendants argue that Plaintiffs' tortious interference claims should be dismissed because Plaintiffs allege Defendants made misrepresentations but do not plead any misrepresentations with particularity.    I disagree.    Rule 9(b) provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."    Fraud requires more than misrepresentation, and Rule 9(b) will not be triggered simply because the plaintiff alleges that the defendant said something that was not true.    Falsity is also a required element in defamation cases, but defamation need not be pled with particularity under Rule 9(b).    Caster v. Hennessey, 781 F.2d 1569, 1570 (11th Cir. 1986) (per curiam); Wenner v. Bank of America, NA, 637 F. Supp. 2d 944, 954 (D. Kan. 2009); Banco Surinvest, S.A. v. Suntrust Bank, Alberta, 78 F. Supp. 2d 1366, 1370-71 (N.D. Ga. 1999).    Similarly, tortious interference claims based on a defendant's allegedly false and disparaging statements to prospective customers are not subject to Rule 9(b).    Banco Surinvest, 78 F. Supp. 2d at 1371.

In the Michigan case, Defendants argue that state law requires Plaintiffs to plead "'with specificity[] affirmative acts by the defendant that corroborate the improper motive of the [tortious] interference.'" (Case No. 6:14-cv-6007, Doc. 36 at 15 (quoting Nicklas v. Green Green & Adams, P.C., No. 299054, 2012 WL 2126066 (Mich. App. Jun. 12, 2012))).    Any "heightened pleading standard" applied by Michigan courts to tortious interference claims is inapplicable in this Court, where Rules 8 and 9 of the Federal Rules of Civil Procedure control.    Caster, 781 F.2d at 1570 (citing Hanna v. Plumer, 380 U.S. 460 (1965)).

G. Quasi-Estoppel

Plaintiffs in 12 cases assert claims for "Quasi Estoppel,"[23] "Estoppel/Quasi-Estoppel,"[24] or "Equitable Estoppel."[25]   Defendants uniformly argue that these claims should be dismissed because, while many of these states recognize the doctrine of quasi-estoppel, none recognize it as an independent cause of action.   No Plaintiff–in these 14 cases or the other seven in which the Court has already ruled on motions to dismiss–has identified a single case holding that quasi-estoppel is recognized as a cause of action in any jurisdiction.

The New Jersey Plaintiffs argue that New Jersey courts "have long permitted parties to assert quasi-estoppel offensively as both a claim and a counterclaim." (Case No. 6:14-cv-6013, Doc. 41 at 16).   In support of this assertion, they point to Kazin v. Kazin, 405 A.2d 360 (N.J. 1979), Green v. State Health Benefits Commission, 861 A.2d 867 (N.J. App. Div. 2004), and Gilbert v. Durand Glass Manufacturing Co., 609 A.2d 517 (N.J. App. Div. 1992).   Kazin was a divorce case in which the wife sought alimony and equitable distribution or, in the alternative, separate maintenance.   405 A.2d at 361.   The husband defended that the parties were not lawfully married because his wife's prior Mexican divorce was invalid.   Id.   The New Jersey court held that the husband was estopped from making this claim because he played an active role in helping his wife obtain the Mexican divorce.   Id. at 367.   Thus, in Kazin, the Court allowed quasi-estoppel

---

[23]   Count V in Case No. 6:14-cv-6006; Count IV in Case No. 6:14-cv-6007; Count IV in Case No. 6:14-cv-6011; Count III in Case No. 6:14-cv-6012 and 6:14-cv-6013; the "Second Claim for Relief" in Case No. 6:14-cv-6014; and Count III in Case No. 6:14-cv-6019.

[24]   Count IV in Case No. 6:14-cv-6008 and 6:14-cv-6020; Count IV in Case No. 6:14-cv-6009; and the first of two counts numbered "Count VI" in Case No. 6:14-cv-6018.

[25]   Count V in Case No. 6:15-cv-6022.   Although the Missouri Plaintiff entitles this Count as one for "Equitable Estoppel," it refers to the doctrine of "quasi-estoppel" in the body of the complaint (Doc. 1, ¶ 137) and calls the claim one for "quasi-estoppel" in its response to the motions to dismiss and does not attempt to rebut Defendants' arguments that "equitable estoppel" is not a cause of action under Missouri law (Doc. 64 at 14).   The Court will assume the Missouri Plaintiff meant to allege a claim for quasi-estoppel.

not as an independent cause of action, but simply to prevent a party from taking a position inconsistent with his prior conduct.   Gilbert, was an "employment wrongful discharge action," 609 A.2d at 518, and Green was an "appeal [of] a final determination of" a state agency regarding the scope of coverage under a health insurance plan issued to state employees, 861 A.3d at 868.   These cases do not support the New Jersey Plaintiffs' claim that quasi-estoppel is a free-standing cause of action under New Jersey law.

The Pennsylvania Plaintiffs suggest that a federal district court in their state "inchoately accepted" quasi-estoppel as a cause of action in Sheehan v. Mellon Bank, N.A., Civ. No. 95-2969, 1996 WL 571779 (E.D. Pa. Oct. 3, 1996), by dismissing "a claim for quasi-estoppel ... not because the claim was invalid but because the defendant had never occupied inconsistent positions."   (Case No. 6:14-cv-6008, Doc. 95 at 16)   In reality, the Sheehan court dismissed a § 1983 claim, not a claim for quasi-estoppel.

The Pennsylvania Plaintiffs argue that the Court should allow their quasi-estoppel claim because Pennsylvania has recognized a cause of action for promissory estoppel. "Promissory estoppel" is the term many courts use to describe the doctrine that is recognized in the Restatement (Second) of Contracts § 90(1).   Restatement § 90 provides that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."   Every state with the exception of Virginia, see W.J. Schafer Assocs., Inc. v. Cordant, Inc., 493 S.E.2d 412, 516 (Va. 1997), has recognized a cause of action under the circumstances described in § 90.   But, Plaintiffs still have not identified a single state that recognizes a free-standing cause of action for quasi-estoppel.   This may be because promissory estoppel lends itself to enforcement as a cause of action in a way

quasi-estoppel does not, because promissory estoppel involves the enforcement of a promise, while quasi-estoppel merely operates to prevent an opposing party from taking a particular position.

Finally, Plaintiffs in several cases argue that the Court should recognize a cause of action for quasi-estoppel because no state-court precedent holds that it is not a cause of action.   The Court should decline this invitation.   Federal courts deciding state-law claims "are supposed to apply state law, not rewrite it."   Bonney v. Canadian Nat'l Ry., 800 F.2d 274, 280 (1st Cir. 1986); see also Wolk v. Saks Fifth Avenue, Inc., 728 F.2d 221, 223 (3d Cir. 1984) ("While a federal court must be sensitive to the doctrinal trends of the jurisdiction whose law it applies, it is beyond the authority of a federal court in such circumstances to create entirely new causes of action.").

After due consideration, I conclude that the laws of Arizona, Michigan, Pennsylvania, Alabama, Illinois, New Jersey, Oregon, Kentucky, Virginia, and Missouri do not recognize quasi-estoppel as a cause of action.   Therefore, I recommend that these claims be dismissed with prejudice.

### H. Conversion

In nine cases, Plaintiffs have asserted claims for conversion.[26]   Defendants argue that all of these claims should be dismissed because none of the applicable states recognize a conversion claim for failure to pay an ordinary debt.   In all but two cases, Plaintiffs concede that their conversion claims should be dismissed.[27]

---

[26] Count VI in Case No. 6:14-cv-6006; Counts VI-VIII in Case No. 6:14-cv-6007; Count VI in Case No. 6:14-cv-6008 and 6:14-cv-6020; Count VI in Case No. 6:14-cv-6009; Count III in Case No. 6:14-cv-6010; the ninth unnumbered count in Case No. 6:14-cv-6015; the second "Count VI" in Case No. 6:14-cv-6018; and Count VI in Case No. 6:14-cv-6022.

[27] See Case No. 6:14-cv-6006, Doc. 77 at 16; Case No. 6:14-cv-6008, Doc. 95 at 22; Case No. 6:14-cv-6020, Doc. 25 at 22; Case No. 6:14-cv-6009, Doc. 26 at 16; Case No. 6:14-cv-6015, Doc. 22 at 15; Case No. 6:14-cv-6018, Doc. 116 at 25; Case No. 6:15-cv-6022, Doc. 64 at 15.

The Michigan Plaintiffs assert three distinct conversion claims for "Common Law Conversion of Profits,"[28] "Statutory Conversion of Profits,"[29] and "Common Law Conversion of Business."[30] Defendants argue that these conversion claims must fail because the failure to pay a debt does not amount to conversion, and the Michigan Plaintiffs have failed to identify the specific money or property Defendants allegedly converted (Case No. 6:14-cv-6009, Doc. 36, at 18-19). The Michigan Plaintiffs make no counterarguments. Instead, they suggest the Court should "decline to address" the conversion claims "at this time" because the Michigan Supreme Court recently heard oral argument in a case addressing "the parameters of claims in conversion." (Case No. 6:14-cv-6009, Doc. 38 at 17); see also Aroma Wines & Equipment, Inc. v. Columbia Distribution Services, Inc., 852 N.W.2d 901 (Mich. 2014) (order granting leave to appeal). Delaying resolution of the pending motions while the Michigan Supreme Court makes a decision would not further the just, speedy, and efficient resolution of this case. The conversion claims asserted by the Michigan Plaintiffs should be dismissed.

The California Plaintiffs emphasize the broad scope of conversion claims under California law (See Case No. 6:14-cv-6010, Doc. 22 at 16 (quoting Welco Electronics, Inc. v. Mora, 223 Cal. App. 4th 202, 211 (2014), for the proposition that "every intangible benefit and prerogative susceptible of possession" may be the subject of a conversion claim)). However, California only recognizes claims for the conversion of money when "there is a specific, identifiable sum involved." PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, 150 Cal. App. 4th 384, 395 (2007). Under California law, "[a] 'generalized claim for money [is] not actionable as conversion.'" Id.

---

[28] Count VI in Case No. 6:14-cv-6007.
[29] Count VII in Case No. 6:14-cv-6007.
[30] Count VIII in Case No. 6:14-cv-6007.

(quoting <u>Vu v. California Commerce Club, Inc.</u>, 58 Cal. App. 4th 229, 235 (1997)).    The California "Plaintiffs are seeking sums that they believe should have been paid to them, not specific money of which they have been deprived or that could be returned, as required to state a claim for conversion."    <u>A & E Auto Body</u>, 2015 WL 304048, at *9.

The California Plaintiffs note that California law imposes a statutory repairman's lien on repaired vehicles, and they suggest that "[b]y parity of reasoning..., the Plaintiff shops have at least an equitable claim to a lien on the funds or policy reserves in the accounts of the Defendant Insurers."    (Case No. 6:14-cv-6010, Doc. 22 at 16).    "If performance of repairs ... created a property interest in funds held in insurance company bank accounts, one would expect such an interest to ... be set out in some statute," like the repairman's lien, "or at least in some judicial decision."    <u>Alpine Straightening Systems</u>, 2015 WL 1911635, at *8 n. 4.    Therefore, I recommend that the conversion claim in the California case be dismissed.

I. Insufficient Payment Claims

Plaintiffs in the Michigan,[31] Pennsylvania,[32] Alabama,[33] and Illinois[34] actions allege that Defendants breached their legal obligation to pay for repairs "[t]hrough intimidation, coercion, collusion, boycotts, and simple flat refusal." (Case No. 6:14-cv-6007, Doc. 1, ¶ 118; Case No. 6:14-cv-6008, Doc. 1, ¶ 142; Case No. 6:14-cv-6020, Doc. 1, ¶ 76; Case No. 6:14-cv-6009, Doc. 1, ¶ 126; Case No. 6:14-cv-6011, Doc. 1, ¶ 146).    "Specifically," Plaintiffs aver,

---

[31] Count I in Case No. 6:14-cv-6007, entitled "Defendants Have Breached Their Legal Obligation."
[32] Count I in Case No. 6:14-cv-6008 and 6:14-cv-6020, entitled "Defendants Have Breached Their Statutory Obligation."
[33] Count I in Case No. 6:14-cv-6009, entitled "Defendants Have Breached Their Statutory and Regulatory Obligation."
[34] Count I in Case No. 6:14-cv-6011, entitled "Defendants Have Breached Their Statutory Obligation."

the Defendants have failed to provide the necessary proper and fair repairs through:

    a.  Refusal to pay and/or fully pay for necessary and required procedures and processes to return a vehicle to its pre-accident condition;

    b.  Utilizing used and/or recycled parts in contravention of the repair shops' expert professional opinion in order to save money and thereby compromising the safety of both the driver and passengers as well as all other members of the traveling public; and

    c.  Requiring shops to purchase replacement parts of unknown manufacture, reliability, and/or quality merely because it is the least expensive option.

(Id.).

The Michigan Defendants seek dismissal of this claim because Plaintiffs have not identified the source of the alleged legal obligation.   In their response, the Michigan Plaintiffs assert that "Defendants have a duty and obligation to pay for the repairs to the vehicles of their respective insureds and claimants so as to return those vehicles to pre-accident condition." (Id., Doc. 38 at 17).   Tellingly, the Michigan Plaintiffs still have not identified the source of this alleged duty, and they do not cite any authority suggesting that Michigan law recognizes a cause of action for breach of an unspecified legal duty. Therefore, I recommend the Court dismiss Count I in the Michigan case.

The Pennsylvania Plaintiffs allege that Defendants violated regulations promulgated by the Pennsylvania Insurance Commissioner pursuant to the Commissioner's authority to enforce the Pennsylvania Unfair Insurance Practices Act ("UIPA"), 40 PA. STAT. § 1171.1 et seq.[35]   See also 31 PA. CODE § 146.8.   Defendants

---

[35] Plaintiffs also cite the Pennsylvania Motor Vehicle Physical Damage Appraiser Act in their complaints, but do not allege a violation of the statute (See Case No. 6:14-cv-6008, Doc. 1, ¶ 141; Case No. 6:14-cv-6020 Doc. 1, ¶ 75).

argue that there is no private right of action under the UIPA.    In their response, the Pennsylvania Plaintiffs do not contend that there is a private right of action to enforce the UIPA or its implementing regulations.    Instead, they argue that violations of those statutes may provide the basis for a cause of action under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Case No. 6:14-cv-6008, Doc. 95 at 8-9).    After due consideration, I find that the UIPA does not afford a private right of action to the Pennsylvania Plaintiffs, and recommend that Count I in the Pennsylvania cases.

The Alabama Plaintiffs withdrew their claim after Defendants filed their motion to dismiss (Case No. 6:14-cv-6009, Doc. 26 at 5).    Accordingly, I recommend the Court dismiss Count I in the Alabama case.

In their complaint, the Illinois Plaintiffs actually cite two separate statutes, which presumably provide the source of the obligation Defendants allegedly breached. Plaintiffs cite § 2 of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2, which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices" including practices defined as "deceptive" under § 2 of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 ILCS 510/2.    Illinois does not recognize a free-ranging private right of action to enforce statutory duties; rather, the existence of such a claim depends on the particular statute.    See Fisher v. Lexington Health Care, Inc., 722 N.E.2d 1115, 1117-18 (Ill. 1999) (setting forth factors used by Illinois courts to determine when a private right of action should be implied in a statute).    The Illinois Plaintiffs' decision to label this claim as one for "breach[]" of "statutory obligation" is difficult to understand given that both the ICFA and IUDTPA expressly authorize civil suits by private parties.    See 815 ILCS 505/10a (allowing "[a]ny person who suffers actual damage" as a result of a violation of the ICFA to sue damages); 815 ILCS 510/3 (allowing

"[a] person likely to be damages by a deceptive trade practice" to sue for an injunction). As a general matter, when a law expressly provides for a cause of action, courts will not imply one in order to expand the legislature's chosen remedial scheme.  Cf. In re D.W., 827 N.W.2d 466, 479 (Ill. 2005) (noting that "where the legislature has expressly provided a private right of action in a specific section of a statute, the legislature did not intend to imply private rights of action to enforce other sections of the same statute"); Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 720 (1967) ("When a cause of action has been created by a statute which expressly provides the remedies for vindication of the cause, other remedies should not readily be implied."); Baptist Health v. Murphy, 373 S.W.2d 269, 288 (Ark. 2005) ("Where there is a statute enacted by the General Assembly that purports to give plaintiffs a private cause of action, the remedy is limited to what the statute expressly provides.").

The elements of an ICFA claim are: (1) a deceptive or unfair act or practice by the defendant; (2) made during a course of conduct involving trade or commerce; (3) made with the intent that the plaintiff rely on the deceptive or unfair practice; (4) causation; and (5) damages.  See Avery v. State Farm Mutual Auto. Ins. Co., 835 N.E.2d 801, 850 (Ill. 2005); Rob Siegel v. Shell Oil Co., 612 F.3d 932, 934 (7th Cir. 2010) (citing Robinson v. Toyota Motor Credit Corp., 775 N.E.2d 951, 960 (Ill. 2002)).   The ICFA proscribes two kinds of practices: those that are "unfair," and those that are "deceptive."   A plaintiff may state a claim under the ICFA's "unfair" prong without alleging that the conduct is deceptive.   Id. at 935 (citing Saunders v. Michigan Avenue Nat'l Bank, 662 N.E.2d 602, 608 (1996)).   The IUDTPA, by contrast, only outlaws "deceptive" practices, that is, practices that "create[] a likelihood of confusion or misunderstanding."   815 ILCS 510/2(a).

The Illinois Plaintiffs have failed to state a claim under ICFA's "deceptive" prong or under IUDTPA because they have failed to allege that Defendants engaged in any deceptive act or practice.    The conduct that forms the basis for this claim–namely, "fail[ing] to provide ... necessary ... repairs" through refusing to pay for "procedures" necessary "to return a vehicle to its pre-accident condition," requiring shops to use used or recycled products, and requiring shops to purchase parts "of unknown manufacturer, reliability, and/or quality"–is not "deceptive" in any relevant sense.    In their response, Plaintiffs belatedly refer to paragraphs in their complaint that allege steering, but these allegations should have at least been referenced in the allegations under this particular count.

To the extent the Illinois Plaintiffs intended to assert an ICFA "unfair" practice claim, it must be dismissed for improper group pleading.    Plaintiffs have not pled facts raising a plausible inference that Defendants conspired with each other or acted in concert, and absent such allegations, liability for ICFA violations must be established on an individualized basis.    If they choose to raise a count based on the ICFA or IUDTPA in an amended complaint, then to avoid unnecessary confusion the Illinois Plaintiffs should identify the statute they are suing under.

J. State Laws Banning Unfair Trade Practices and Unfair Competition

1. California Unfair Competition Law

The California Plaintiffs have brought a claim under their state's Unfair Competition Law ("UCL").[36]    As its name suggests, the law proscribes "unfair competition," which is defined as "any unlawful, unfair or fraudulent business act or practice and unfair,

---

[36] Count IV in Case No. 6:14-cv-6010.

- 49 -

deceptive, untrue or misleading advertising."   CAL. BUS. & PROF. CODE § 17200.   The California Plaintiffs identify the following practices which they allege are unfair or unlawful under the UCL: the DRP surveys, the suppression of labor rates, suppression of repair and material costs, steering, and "making an end-run around the 1963 Consent Decree." (Case No. 6:14-cv-6010, Doc. 1, ¶ 123).

The UCL allows any "person who has suffered injury in fact and has lost money or property as a result of ... unfair competition," to bring a civil action against the person or persons engaged in the unfair competition.   Id. §§ 17203, 17204.   A court may enjoin violations of the UCL and order restitution.   Id. § 17203; Korea Supply Co. v. Lockheed Martin Corp., 63, P.3d 937, 947-48 (Cal. 2003).   But, the UCL "is not an all-purpose substitute for a tort or contract action," and does not allow a plaintiff to recover monetary damages.   Cortez v. Purolator Air Filtration Products Co., 999 P.2d 706, 712 (Cal. 2000).

Under the UCL, statutory unfair competition may take one of three forms: unlawful, unfair, or fraudulent.   See Zhang, 304 P.3d at 174.   The California Plaintiffs do not allege that Defendants' conduct was fraudulent within the meaning of the UCL (see Case No. 6:14-cv-6010, Doc. 1, ¶ 124 (alleging that "Defendants' acts or practices are unlawful and unfair")).   Accordingly, I will limit my discussion to the unlawful and unfair prongs.

"By proscribing 'any unlawful' business act or practice, the UCL 'borrows' rules set out in other laws and makes violations of those rules independently actionable."   Id. at 167 (quoting Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 973 P.2d 527, 561 (Cal. 1999)).   "An unlawful act is one 'forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.'"   In re Pomona Valley Medical Group, Inc., 476 F.3d 665, 674 (9th Cir. 2007) (quoting Saunders v. Superior Court, 27 Cal App 4th 832, 838 (Cal. App. 1994)).   As a general matter, a

UCL claim may be based on a violation of a law that itself provides no private right of action.   See, e.g., Rose v. Bank of America, N.A., 304 P.3d 181 (Cal. 2013) (violation of federal Truth in Savings Act); Stop Youth Addiction, Inc. v. Lucky Stores, Inc., 950 P.2d 1086 (Cal. 1998) (violation of state criminal law), superseded by statute on other grounds as stated in, Arias v. Superior Court, 209 P.3d 923 (Cal. 2009).   However, in Zhang, a majority of the California Supreme Court held that UCL claims may not "rest exclusively on" violations of the California Unfair Insurance Practices Act ("UIPA"), CAL. INS. CODE. § 790 et seq.   304 P.3d at 176.

Although the California Plaintiffs allege that Defendants engaged in "unlawful" practices, they do not–either in their complaint or their response to the motions to dismiss–tether their UCL claim to any particular law Defendants allegedly violated.[37] The alleged Sherman Act violations cannot support an "unlawful"-act-or-practice UCL claim because the California Plaintiffs failed to adequately plead that any Defendant violated the Sherman Act.   And, the California UIPA, which Plaintiffs cite elsewhere in their memorandum, cannot alone furnish the basis for a UCL claim.   Zhang, 304 P.3d at 176.   Therefore, I find that the California Plaintiffs have failed to adequately plead that Defendants engaged in an "unlawful act or practice" within the meaning of the UCL.

Even if an act or practice is not prohibited by another statute, it may still qualify as "unfair competition" under the "unfair" or "fraudulent" prongs of the UCL.   Cel-Tech, 973 P.2d at 540.   "In permitting the restraining of all 'unfair' business practices," the UCL "undeniably establishes only a wide standard to guide the courts of equity."   Barquis v.

_____

[37] While a Plaintiff are not required to "'set out a legal theory for [their] claim for relief,'" Johnson v. City of Shelby, Miss., 134 S. Ct. 346, 347 (2014) (quoting 5 Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1219), they cannot hide the ball indefinitely and expect the Court to search for an unspecified statute the Defendants violated.

Merchants Collective Ass'n, 496 P.2d 817, 830 (Cal. 1972).   "[G]iven the creative nature of the scheming mind, the Legislature evidently concluded that a less inclusive standard would not be adequate."   Id.   While the scope of this provision "is sweeping, it is not unlimited," and "[c]ourts may not simply impose their own notions of the day as to what is fair or unfair."   Cel-Tech, 973 P.3d at 541.   In Cel-Tech, the California Supreme Court articulated a standard for "unfairness" under the UCL:

> When a plaintiff who claims to have suffered injury from a direct competitor's "unfair" act or practice invokes section 17200, the word "unfair" in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

Id. at 544.   The Cel-Tech court said in a footnote that this test was limited to the context of UCL actions brought "by competitors alleging anticompetitive practices."   Id. at 544 n. 12.   In Zhang, the court observed that "[t]he standard for determining what business acts or practices are 'unfair' in consumer actions under the UCL is currently unsettled." Id. at 174 n. 9; see also In re Adobe Systems, Inc. Privacy Litig., ___ F. Supp. 3d ___, 2014 WL 4379916, at *17 (N.D. Cal. Sept. 4, 2014) (noting that definition of "unfair" is "in flux" in California courts and identifying two tests for whether conduct is "unfair" in consumer UCL actions).

The California Plaintiffs are not "consumers" or "competitors" of the Defendant insurance companies; rather, they are businesses in one industry (automotive repair) alleging harm caused by anticompetitive practices in another industry (insurance).   This makes it even less clear what test the Court should apply to determine whether a practice is unfair.   Eventually, the Court may reach this issue.   For now, I find that the California Plaintiffs' UCL claim must be dismissed based on their use of group pleading, and

- 52 -

because they have failed to allege the existence of any agreement or conspiracy or common scheme that would provide some connection between the conduct of the different Defendants.   Therefore, like their tortious interference claims, the California Plaintiffs' collective allegations in their UCL count are insufficient to survive a motion to dismiss.

   2. Oregon Unfair Trade Practices Act

The Oregon Plaintiff alleges that Defendants violated the Oregon Unfair Trade Practices Act ("OUTPA") "by making false and disparaging comments to their insureds about Plaintiff's services."[38]   This count must be dismissed because of Plaintiff's improper reliance on group pleading.   As with the tortious interference claims, the Oregon Plaintiff attributes wrongdoing collectively to every defendant.   And, as noted above, see supra Parts III.A, III.F.3, III.J.1, such collective allegations are insufficient to survive a motion to dismiss.

Defendants argue that this claim should be dismissed with prejudice because the Oregon Plaintiff is not a consumer of Defendants' products and therefore does not have "standing" to bring a claim under OUTPA.   The GEICO Defendants ask for a fee award, on the grounds that Plaintiff lacked an objectively reasonable basis for bringing this claim (Case No. 6:14-cv-6014, Doc. 121 at 25).   The statute does not expressly limit private claims to consumers, and no Oregon court has addressed whether a plaintiff must be a consumer to have standing under OUTPA.   CollegeNet, Inc. v. Embark.Com, Inc., 230 F. Supp. 2d 1167, 1172 (D. Or. 2001).   However, the United States District Court for the District of Oregon has held in a number of cases that only "consumers" have standing

---

[38] The "Fourth Claim for Relief" in Case No. 6:14-cv-6014.

under OUTPA.   See, e.g., Benson Tower Condominium Owners Ass'n v. Vitaulic Co., 22 F. Supp. 3d 1126, 1136 (D. Or. 2014); Volm v. Legacy Health Systems, 237 F. Supp. 2d 1166, 1175 (D. Or. 2002); CollegeNet, 230 F. Supp. 2d at 1174; Oregon Laboroers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc., 17 F. Supp. 2d 1170, 1180 (D. Or. 1998).   Most of these cases have construed the word "person" in OUTPA's civil remedy provision, ORS § 646.638(1) to mean "consumer."   See, e.g., Benson Tower, 22 F. Supp. 3d at 1135–36; CollegeNet, 230 F. Supp. 2d at 1172–75.

I am not persuaded by the reasoning in these decisions for interpreting "person" to mean "consumer."   "In interpreting a statute, the court's task is to discern the intent of the legislature."   Portland General Electric Co. v. Bureau of Labor & Indus. ("PGE"), 859 P.2d 1143, 1145 (Or. 1993) (citing ORS § 174.020), superseded in part by statute as recognized in, State v. Gaines, 206 P.3d 1042 (Or. 2009).   In doing so, the court must apply the three-step process outlined in PGE, as modified in Gaines.   See Gaines, 206 P.3d at 1050–51.   Because the issue of standing under OUTPA is not necessary to resolve the motions to dismiss, I will not undertake a full-blown PGE-Gaines analysis in this report and recommendations.   However, I will note several concerns I have with interpreting "person" to mean "consumer" in § 646.638(1), which lead me to recommend against dismissing this claim with prejudice.

First, when the legislature uses the same term throughout a statute, this "indicates that the term has the same meaning throughout the statute."   Atkinson v. Board of Parole & Post-Prison Supervision, 143 P.3d 538, 541 (Or. 2006).   Under the interpretation of § 646.638(1) adopted in CollegeNet, the word "person" means two different things *in the same sentence*.   OUTPA's civil remedies provision allows "a person" to sue "another person" for injuries to property caused by unfair trade practices,

but no court has or ever would construe OUTPA to permit only suits by "a" consumer against "another" consumer.

Second, the laundry list of unfair trade practices identified in the statute includes unfair practices that harm business as much as or more than consumers.    Unsolicited telephone calls and faxes, for example, inflict injury on businesses in the same manner as they do consumers.    Cf. ORS § 646.608(1)(ff), (hh)-(jj).    The most recent addition to the list of unfair trade practices—a ban on asserting bad faith infringement claims—almost exclusively harms businesses. ORS § 646.608(1)(vvv); Or. Laws, ch. 19 § 2 (2014).    A narrow, atextual construction of the word "person" as used in § 646.638(1) would seem to thwart the Oregon legislature's intent in adding these provisions to the unfair trade practices law.

Finally, the Oregon Supreme Court has cautioned against adopting narrowing constructions of statutorily defined terms, including the very term at issue here, based on conclusions about the statute's purpose drawn from legislative history.    See Hamilton v. Paynter, 149 P.3d 131 (2006) (refusing to construe the word "person," as used in ORS § 12.155, to mean "insurer," given the general statutory definition of "person" in ORS § 174.100(5) as including "individuals, corporations, associations, firms, partnerships, limited liability companies and joint stock companies," unless "the context or a specifically applicable definition requires otherwise").

At the very least, whether a "person" must be a "consumer" to have standing under OUTPA is a much closer question than some of the case law suggests.    And there certainly is no need to "mak[e] [an] unnecessary Erie 'guess[],'" Kenner v. Convergys Corp., 312 F.3d 1236, 1241 (11th Cir. 2002), before the Oregon Plaintiff has plausibly pled a "non-consumer" UTPA claim, assuming such a claim exists under Oregon law.

Accordingly, I will not recommend dismissal with prejudice of Plaintiff's OUTPA claim for lack of standing.    GEICO's request for attorney's fees should be denied because, as explained above, Plaintiff's reading of the statute is plausible (indeed, it may well be correct), and neither the Oregon Supreme Court nor the Oregon Court of Appeals has rejected that reading.    Cf. Mantia v. Hanson, 79 P.3d 404, 415 (Or. App. 2003) (denying fee award under § 20.105 where Court of Appeals "had not conclusively determined" a key issue and that question "was unsettled and manifestly subject to reasonable dispute").

### 3. Washington Consumer Protection Law

The Washington Plaintiffs make a claim under the Washington Consumer Protection Act ("CPA"), WRC 19.86 et seq., alleging that Defendants engaged in unfair or deceptive acts or practices in violation of that statute.[39]    WRC 19.86.020 declares unlawful all "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."    "Any person who is injured in his or her business or property by a violation of WRC 19.86.020 ... may bring a civil action" for an injunction or damages.    WRC 19.86.090.    "[T]o prevail in a private CPA action ... a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation."    Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 719 P.2d 531, 533 (Wash. 1986).

A plaintiff may establish the first two elements of a CPA claim in one of two ways: first, by showing that "(1) [the] act or practice ... has a capacity to deceive a substantial

---

[39]  The fifth unnumbered count in Case No. 6:14-cv-6015.

portion of the public [and] (2) has occurred in the conduct of any trade or commerce," or second, by showing that the defendant engaged in an act that the Washington legislature has defined to be a per se unfair trade practice.    Hangman Ridge, 719 P.2d at 535-36. The Washington Plaintiffs allege that Defendants engaged in per se unfair and deceptive acts enumerated in the § 284-30-390 of the Washington Administrative Code, including

> (1) Failing to make a good faith effort to communicate with the repair facility chosen by the claimant.
>
> (2) Arbitrarily denying a claimant's estimate for repairs ... (b) If the insurer pays less than the amount of the estimate from the claimant's chosen repair facility, the insurer must fully disclose the reason or reasons it paid less than the claimant's estimate, and must thoroughly document the circumstances in its claim file.
>
> (4) Failing to prepare or accept an estimate provided by the claimant that will restore the loss vehicle to its condition prior to the loss.
>
> (6) Failing to consider any additional loss related damage the repair facility discovers during the repairs to the loss vehicle.

(Case No. 6:14-cv-6015, Doc. 1, ¶ 6.20).    The Washington Plaintiffs aver that "Defendants' conduct alleged herein violates these regulations defining conduct that is per se unfair or deceptive violates [sic] the Consumer Protection Act."    (Id. ¶ 6.21). Plaintiffs also assert that "Defendants' conduct alleged herein was unfair and deceptive and violative of the Consumer Protection Act."    (Id. ¶ 6.22).

The Washington Plaintiffs' CPA claim fails for at least two reasons.    First, the use of group pleading renders the claim insufficient.    As with tortious interference, liability under the CPA for the sort of conduct proscribed in § 284-30-390 of the Washington Administrative Code must be established on an individualized basis.    Federal courts in Washington have dismissed CPA claims that improperly relied on group pleading, see,

e.g., <u>Stafford v. Sunset Mortgage, Inc.</u>, No. C12-1877MJP, 2013 WL 1855743, at *3 (W.D. Wash. Apr. 29, 2013), and I recommend this Court do so here.

The Washington complaint is also "a model 'shotgun' pleading of the sort [the Eleventh Circuit] has been roundly, repeatedly, and consistently condemning for years, long before this lawsuit was filed." <u>Davis v. Coca-Cola Bottling Co.</u>, 516 F.3d 955, 979 (11th Cir. 2008). In most (although not all) counts, Plaintiffs re-allege the preceding paragraphs, including those of the previously-stated counts, without specifying what allegations relate to what claims. While courts and opponents confronted with a shotgun pleading can usually discern which factual allegations relate to which counts, doing so requires the expenditure of time and effort that could be avoided by the filing of a properly framed pleading.

The Washington CPA claim is remarkably opaque, even for a shotgun pleading. It alleges, without offering any further detail, that "Defendants' conduct alleged herein was unfair and deceptive and violative of the Consumer Protection Act." (Case No. 6:14-cv-6015, Doc. 1, ¶ 6.22). Exactly what "conduct alleged herein" violates the CPA, the reader is left to wonder. Is it State Farm's refusal to "disclose any of the methods" it uses to conduct its survey and establish a "market rate"? (Case No. 6:14-cv-6015, Doc. 1, ¶ 5.17). Is it one or more unspecified Defendant's insistence on using "used and/or recycled parts" in repairs? (<u>Id.</u>, ¶ 5.40). Does it refer to Defendants telling customers whether or not a shop is on a "preferred provider list"? (<u>Id.</u>, ¶ 5.54). Or is it something else?

It is not the Court's job to search the complaint for facts that might support a particular claim for relief. "Judges are not like pigs, hunting for truffles buried in [complaints]." <u>United States v. Dunkel</u>, 927 F.2d 955, 956 (7th Cir. 1991). Nor, for that

matter, is opposing counsel expected to sift through factual allegations like a prospector panning for gold.   The Eleventh Circuit has made clear that district courts can and should require a litigant who has filed an improper shotgun pleading to replead.   United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1354 n. 6 (11th Cir. 2006).   Therefore, I recommend the Court dismiss Plaintiffs' Washington CPA claim.

### IV. Conclusion

Upon consideration of the foregoing, I respectfully recommend:

1. That all Defendants' motions to dismiss in the Pending Cases be **granted in part** and **denied in part**;

2. That the complaints in the Pending Cases be **dismissed**;

3. That the dismissals be without prejudice, except for Plaintiffs' claims for "Quasi-Estoppel," "Estoppel/Quasi-Estoppel," and "Equitable Estoppel."

4. That Plaintiffs be afforded 21 days in which to amend their complaints.

Specific written objections to this report and recommendations may be filed in accordance with 28 U.S.C. § 636, and M.D. Fla. R. 6.02, within fourteen (14) days after service of this report and recommendations.   Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on June 3, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

> Presiding United States District Judge
> Counsel of Record